**Gus M. REA, Appellant,**

v.

**Dr. David W. GAULKE et al., Appellees.**

**No. 242.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

May 28, 1969.

Rehearing Denied June 25, 1969.

John H. Holloway, Houston, for appellant.

Frank B. Davis, Andrews, Kurth, Campbell & Jones, Houston, for appellees.

TUNKS, Chief Justice.

This is a medical malpractice case. The trial court rendered judgment on a jury verdict for one defendant and withdrew the case from the jury as to the other defendant and rendered judgment for him. The plaintiff has appealed.

In January, 1965, the defendant, Dr. David W. Gaulke, performed surgery on the plaintiff, Gus M. Rea, for the correction of bilateral direct inguinal hernias. Dr. Gaulke was assisted by the defendant, Dr. James E. Cook, Jr. Following the surgery the plaintiff's left testicle became temporarily swollen and later atrophied to a fraction of its normal size. The plaintiff filed suit against the two doctors to recover damages resulting from this development.

The plaintiff alleged that Dr. Gaulke contractually guaranteed "that plaintiff would suffer no ill effects from the sur-

gery;" that the operation was performed without his informed consent in that he was not told that he might suffer the partial loss of a testicle and that he would not have agreed to the operation if he had been so told; that the doctors were negligent in various particulars in the performance of the surgery; that the doctors failed to get his informed consent to the post-operative care given him; that the doctors were negligent in the performance of their post-operative treatment.

At the close of the testimony the trial court submitted special issues inquiring as to the first two of the above listed theories of liability as against the defendant Dr. Gaulke and refused issues as to the others. The jury answered the liability issues favorably to the defendant and found no damages.

The appellant, by his points of error, contends that there was no evidence to support the jury's findings; that such findings were against the preponderance of the evidence; that the trial court erred in withdrawing the case from the jury as against Dr. Cook; that the trial court erred in refusing his requested special issues relating to his other pleaded theories of liability; that the trial court erred in admitting into evidence, over his objection, a consent form signed by him in which the description of the operation to be performed was left blank; and that the jury's failure to find any damage is contrary to the uncontroverted evidence. We overrule all of those points of error.

Special issue no. 1 relating to the informed consent phase of the case was in the following language:

"Do you find from a preponderance of the evidence that a reasonable medical practitioner of the same school of medicine and same or similar community under the same or similar circumstances would have disclosed to his patient the risks of damage to the testicles incident to an operation for correction of bilateiral direct inquinal hernias?"

No objection to that issue, or any other part of the charge, is shown by the record. The jury answered that issue, "We do not." Other issues relating to informed consent were predicated on an affirmative answer to that issue and were, therefore, not answered.

The defendant, Gaulke, was first called to the witness stand, as an adverse witness, by the plaintiff. He testified to an educational and training background which clearly qualified him as an expert witness. He is a medical doctor specializing in abdominal surgery. In such capacity he has performed several thousand operations including many for the purpose of correcting inguinal hernias. He testified that statistically about one hernia operation in a hundred will result in some impairment of a testicle and that in his own experience about one such operation in two hundred had resulted in such impairment. He admitted that he did not tell the plaintiff of the possibility of such result. In response to a question by plaintiff's counsel as to whether a prudent doctor in the exercise of ordinary care should tell a hernia patient of such possible result, he said, "I don't think this is ordinarily mentioned by doctors in Harris County." Another question asked him was, "It's your opinion that other reasonable and prudent doctors don't even bring up the testicle loss as a possible loss from a hernia operation?" He answered, "I would doubt it." He also testified that when such a loss occurred it was because of some physical anomaly encountered during the course of the surgery.

The defendants called as a witness Dr. Arlis Wayne Bing, a medical doctor to whom the plaintiff had gone after his surgery for the treatment of some unrelated complaints. He, too, was asked whether a reasonable medical doctor would tell a hernia patient that an operation might result in a loss or damage to a testicle. He replied, "I would say this would not be a routine matter in explanation to the patient." He testified that there are many unexpected complications that may arise in

the course of such surgery, that, in keeping with the customary practice, a doctor does not discuss and list all of them with the patient before operation.

Other testimony relevant to the informed consent issue came from the other defendant, Dr. Cook. He assisted Dr. Gaulke in the operation on the plaintiff. He was a general practitioner who was licensed to practice medicine in 1960. He testified that he, before hernia surgery, would tell the patient of possible damage to a testicle and that he felt that a reasonably prudent doctor should so inform a patient in getting his consent to the surgery. In this connection it should be noted that Dr. Cook had not seen the patient before the surgery and had not participated in procuring the plaintiff's consent to the operation. No contention was made that he, personally, had been derelict in failing to fully inform the patient of the possible consequences of the operation.

■ We hold that there was evidence to support the jury's answer to special issue no. 1 and that such answer was not so against the weight of the evidence as to be clearly wrong.

Special issue no. IV was in the following language:

"Do you find from a preponderance of the evidence that the defendant, Dr. David Gaulke, made an oral agreement with the plaintiff, Mr. Gus Rae, that the hernia operation would be performed without any ill effect therefrom; that Mr. Rae would be in the hospital for a week and at home for two weeks and could return to work thereafter and, that Mr. Rae would be as good as new?"

The jury answered it, "We do not."

■ The testimony relating to this issue was the plaintiff's testimony that the doctor did make such an agreement and the doctor's testimony that he did not. Also received in evidence was a consent to surgery form signed by the plaintiff when he went into the hospital. On that consent form the following words appear: "I also certify that no guarantee or assurance have been made as to the results that may be obtained." On that consent form the description of the operation to be performed was left blank and the plaintiff testified that the name of the operating doctor was not shown at the time he signed it. The plaintiff objected to the admission of the exhibit for those reasons. The trial court properly overruled the objection. It was uncontroverted that at the time of the signing of the form the plaintiff knew which doctor was to perform, and did perform, the surgery, and knew the type of surgery which was to be, and was, performed. It is not contended that the above quoted language with reference to the absence of any guaranty was not on the document when it was signed. Under those circumstances, the fact that the blank, or blanks, were not filled in was immaterial.

■ We hold that there was evidence to support the jury's answer to special issue no. IV and that such answer was not so against the weight of the evidence as to be clearly wrong.

■ The defendant, Dr. Cook, had not even seen the plaintiff before the operation. He was a general practitioner whose only role was that of assistant to Dr. Gaulke during the surgery. His function in such capacity is described in the following testimony:

"* * * at our hospital whenever the peritoneal cavity is opened there must be an M.D. in attendance to the surgeon. The reason for this being it's quite obvious, if the attending surgeon should have a coronary and become suddenly ill we would not want the patient to be left without medical attendance. Therefore, you have a surgical assistant come in and be with the surgeon so that he might be able to take care of any emergency that might exist with the surgeon in charge of the case. And also, then, it's natural that a surgical assistant is going to help retract, cut sutures, and do those

things which he is directed to do by the chief surgeon."

There is no evidence that anything he did or failed to do within the scope of his participation in the surgery was either negligence or a cause of the injury of which the plaintiff complained. The trial court properly withdrew the case as against him from the jury and rendered judgment in his favor.

The defendant, Dr. Gaulke, testified at considerable length as to the details of the procedures followed by him in the operation. His testimony confirmed that there are a number of standard textbook procedures recognized in the profession relative to hernia operations. He further testified that in the course of such surgery it is not unusual that an unforeseeable condition will be encountered that will require an improvisation as to the surgical procedures. In this operation a physical anomaly which had not been anticipated appeared. It was discovered that there was an adherence between the plaintiff's left spermatic cord and the left hernia sac. The cord structures where they emerged from the abdominal wall were markedly thin. Such situation was described as "most unusual." This condition was probably caused by the fact that the hernia sac had exerted pressure on the cord for a long period of time. In order to remove the sac it was necessary to dissect the tissues of the cord from it. Dr. Gaulke admitted that "there was some question as to whether the circulation to the testicle might have been compromised by the dissection of the cord structures from the tissues of the sac." He also said, however, that the atrophy may have been caused by the abnormal condition of the plaintiff's anatomy, unrelated to any injury to the cord in the operation.

■ There is no testimony from Dr. Gaulke, or from any other medical expert, that in dissecting the spermatic cord from the hernia sac, or in any of the surgical procedures, he failed to conform to any standard of medical practice. Even if there had been such testimony by which a

question of fact as to the negligence was raised, there was no testimony that such negligence was a proximate cause of the resulting condition of which the plaintiff complains. For those reasons the trial court properly refused to submit issues inquiring as to Dr. Gaulke's alleged negligence in the manner in which he performed the operations. Hart v. Van Zant (Tex.Sup.), 399 S.W.2d 791; Porter v. Puryear, 153 Tex. 82, 262 S.W.2d 933; Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 13 A.L.R.2d 1.

By other points of error the appellant contends that he was deprived of the privilege of exercising an informed consent as to the post-operative treatment given him and that the trial court erred in refusing to submit issues relating to that contention. On the second day following the operation, Dr. Gaulke noted that the plaintiff's testicle was painful and was slightly swollen. His temperature was 101.8°. Dr. Gaulke diagnosed the condition as orchitis, an inflammation due to infection. · He treated it with antibiotics, enzymes, and by application of ice packs, which he described as the "accepted procedure" in dealing with orchitis. When the plaintiff was discharged from the hospital on January 12th, there was still some swelling but his temperature was normal and he no longer complained of pain. On January 23rd, the plaintiff was examined in the doctor's office. By that time the testicle was of normal size. On that occasion Dr. Gaulke suggested that the plaintiff return for another examination within two weeks. The plaintiff, however, did not return to Dr. Gaulke's office until March 22nd. On that occasion the plaintiff complained of occasional pain and the left testicle was approximately one-half its normal size. The plaintiff testified that it later atrophied to about one-eighth normal size.

After the operation and while plaintiff was in the hospital Dr. Gaulke did not discuss with him the possibility of atrophy of the testicle and did not discuss with him the advisibility of consulting with a urolo-

gist. The evidence showed that there was a surgical procedure that was sometimes used in the treatment of swollen testicles. The defendant did not discuss with the plaintiff the availability of this surgical procedure. It is because of these failures that the plaintiff insists that he was deprived of the opportunity of exercising his informed consent as to the post-operative treatment given him and that the trial court erred in refusing to submit special issues inquiring as to the doctor's negligence in so depriving him of such opportunity.

 There are situations wherein a doctor's failure to inform a patient of certain risks incident to a diagnosis or proposed treatment, in obtaining his consent, may be actionable. However, in establishing liability for such failure, the patient has the burden of proving by expert medical evidence that the reasonable medical practitioner of the same school in the same or similar community under the same or similar circumstances, would have told the patient of such risks. The patient also has the burden of proving by expert medical evidence that such failure was a proximate cause of his damage. Wilson v. Scott (Tex.Sup.), 412 S.W.2d 299. In the case here under consideration we need not decide whether the situation was such that Dr. Gaulke was required to get the informed consent of the plaintiff before administering the post-operative treatment that he gave. There was no expert medical evidence establishing a professional standard from which he departed or that his failure to disclose risks was a proximate cause of the damage of which the plaintiff complained. There also was no evidence of the character required to raise the issues as to whether anything the doctor did or did not do in connection with the post-operative treatment of the plaintiff was either negligence or a proximate cause of the plaintiff's damage.

The jury's failure to find that the plaintiff sustained damage was immaterial and does not require reversal. Southern Pine Lumber Co. v. Andrade (opinion adopted), 132 Tex. 372, 124 S.W.2d 334. The record does not suggest that such failure to find damages indicates such a prejudice that it influenced the jury in its findings on the issues relating to liability.

The judgment of the trial court is affirmed.