**Rita E. TRAYLOR, Individually and as next friend of Dwayne Alan Traylor, a minor, Appellant,**

**v.**

**Dr. Joseph C. GOULDING et al., Appellees.**

**No. 15929.**

Court of Civil Appeals of Texas, Houston (1st Dist.)

Oct. 26, 1972.

Rehearing Denied Jan. 26, 1973.

Second Rehearing Denied Feb. 15, 1973.

Writ of Error Granted July 11, 1973.

John H. Holloway, Houston, for appellant.

Frank B. Davis, Thomas L. Schubert, Houston, for appellees; Andrews, Kurth, Campbell & Jones, Houston, of counsel.

COLEMAN, Justice.

This is an appeal from a judgment for the defendants in a medical malpractice suit. The case was tried to a jury and judgment was entered on a jury verdict.

On March 8, 1966, Mrs. Traylor saw her eighteen month old son, Dwayne Alan, swallow a chicken bone. The child gagged, coughed, and appeared to have difficulty in breathing. Mrs. Traylor immediately gave first aid and then took the child to the emergency room of the Pasadena Bay Shore Hospital, where he was seen by Dr. Joseph C. Goulding. At that time the child's symptoms had disappeared. The doctor examined the child's throat and lungs, and found no abnormality. He did not hospitalize the child.

On March 11, 1966, Mrs. Traylor took the child back to the emergency room because he was coughing and running a high temperature. Dr. Goulding was again on duty. He testified that he did not remember the child. Mrs. Traylor testified that she told him about the chicken bone. Dr. Goulding diagnosed bronchitis and prescribed penicillin. No x-rays were taken either time.

On March 13, 1966, Mrs. Traylor took the child to the emergency room of Hermann Hospital, where he was seen by Dr. R. G. Smith. He was informed of the chicken bone incident. X-rays were taken on the night of March 13, and again the next day after the child was admitted by Dr. Smith for treatment. Dr. Smith reached the medical opinion that the child had pneumonia in the left lung, and from his examination of the x-rays felt that there was a question as to whether they showed the presence of the chicken bone in the base of the right lung. Dr. Smith noted on the hospital record his diagnosis of pneumonia and also "R/O foreign body aspiration." He did not refer him to a specialist at that time because of the pneumonia. Dr. Smith was a resident physician in pediatrics at the time. He testified that after he admitted the child, he was no longer responsible for his medical care. Two doctors, who were interns, were directly responsible for the child's care under the supervision of the staff doctors. He did not remember checking back to see whether any procedures were taken to rule out the possibility that a chicken bone was in the child's lung. He thought he told Mrs. Traylor that he would not treat the child further, and that Dr. OePersio would take care of him in the ward. He did not remember whether she agreed. He thought that bronchoscopy could have been done about the 21st or 22nd.

The child was discharged from Hermann Hospital on March 23, 1966. He was readmitted on May 28, 1966, suffering from fever and poor breathing. On June 4, 1966, a bronchoscopy was performed by another doctor and a chicken bone was discovered and removed from the base of the right lung.

The jury found that the failure of Dr. Goulding to x-ray Dwayne Alan was negligence, but failed to find that the failure

was a proximate cause of any damage to the minor plaintiff. The jury found that Dr. Goulding's failure to advise Mrs. Traylor "of the possibility that the chicken bone could be in the minor child's lung" was negligence, but failed to find that such negligence was a proximate cause of any damage to the child. The jury failed to find Dr. Smith guilty of any of the acts of negligence with which he was charged.

Appellant asserts eighteen points of error. The first fifteen attack the jury's negative findings to Special Issues 2, 3, 6, 7, 9, 12, 14 and 15 contending that they are contrary to the undisputed evidence and therefore incorrect as a matter of law, and that they are so contrary to the great weight and preponderance of the evidence as to be manifestly wrong. The last three points relate to the refusal of certain requested special instructions.

■ Several x-rays were taken while the child was being treated in Hermann Hospital. On one of them the doctors saw a condition compatible with the presence of a foreign object at the base of the right lung from which area the chicken bone was eventually removed. Considering the child's history and this x-ray Dr. Smith felt that other tests were required to rule out the presence of the chicken bone. Other x-rays were taken which showed no evidence of a foreign body in that area. There was evidence that there was not sufficient calcium density in a chicken bone for it to show up well on x-rays. The failure of Dr. Goulding to x-ray the child cannot be held, as a matter of law, the proximate cause of damage to him. The evidence is not conclusive. Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359 (1957).

■ The points alleging that answers to certain issues are so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust present nothing for us to review. In each instance the jury answered "We do not" to issues on which appellant had the burden of proof. This is a "failure to find", rather than a finding, and means that the plaintiff failed to carry the burden of proving the fact. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191 (Tex. 1966). The negative answer of the jury to such an issue need not be supported by affirmative evidence, and to complain on appeal of such an answer a party must contend that the evidence establishes the answer as a matter of law. Smith v. Safeway Stores, Inc., 433 S.W.2d 217 (Tex. Civ.App.—Tyler 1968, writ ref'd, n. r. e.).

■ Dr. Goulding testified that he did not suspect that the chicken bone was in the child's lung. On his examination of the child he found no evidence of such a condition. This testimony supports the "no" answer made by the jury to Special Issue No. 3, asking whether the failure to refer the child to a specialist was negligence.

■ The same evidence supports the "no" answer to Special Issue No. 5, asking whether Dr. Goulding's failure to advise Mrs. Traylor of the possibility that the chicken bone could be in the minor child's lung was negligence. There was no expert testimony that a doctor should give such information to a patient. King v. Flamm, 442 S.W.2d 679 (Tex.1969).

■ Neither does the evidence require a finding that Dr. Goulding was negligent in failing to perform a bronchoscopy on the child or in failing to refer the child to a physician capable of performing such a procedure. There was evidence that general practitioners ordinarily do not perform that procedure. The doctor did not consider the procedure necessary. There was no evidence that a doctor should carry out that procedure under the circumstances known to Dr. Goulding.

Dr. Smith's testimony that he thought he told Mrs. Traylor about the possibility that the chicken bone was in the boy's lung, supported by the fact that he noted on the hospital record his recommendation that such a possibility be ruled out, constitutes

some evidence to support the jury in its answer to Issue No. 9.

■ The jury failed to find that the conduct of Dr. Smith in failing to remove the bone, or to refer the child to a specialist for that purpose, was negligent. Dr. Smith testified that he did not consider himself qualified to do bronchoscopy. His failure to attempt the procedure could not be negligence. He testified that at the time he attended the child he was too sick for the procedure to be carried out. Dr. Goulding testified that if one was "strongly suspicious" that a foreign body was in the lung, he would refer the patient to a specialist for bronchoscopy. Dr. Smith had recommended some such procedure. He was at least suspicious. However he had turned over the patient to other doctors before the patient's condition was such that the procedure could be undertaken. He never checked to see whether his recommendation was followed in the treatment of the child. Appellant has argued that the duty of the doctor to treat the child continued to a date when the child could have been treated by bronchoscopy. This is not established by the evidence. It appears that the doctor terminated the doctor-patient relationship immediately after the child was admitted to the hospital. If such termination was actionable and resulted in damage, it was the burden of the appellant to request issues establishing these facts. The issue under discussion was not appropriate for such purpose. Lee v. Dewbre, 362 S.W.2d 900 (Tex.Civ.App.—Amarillo 1962). The answer made by the jury to the issue submitted is fully supported by the evidence.

■ Appellant has complained of the refusal of the trial court to submit certain requested explanatory instructions. These points do not present error since the instructions were not necessary to enable the jury to properly pass on the issues submitted. Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481 (1943); Levermann v. Cartall, 393 S.W.2d 931 (Tex.Civ. App.—San Antonio 1965, writ ref'd, n. r. e.).

Appellant's points of error complaining of the failure of the jury to find the damage required by the evidence in answer to the issues submitted do not present reversible error. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (1939); Rea v. Gaulke, 442 S.W.2d 826 (Tex.Civ.App.—Houston (14th) 1969, writ ref'd, n. r. e.).

Affirmed.

## ON MOTION FOR REHEARING

■ Appellant points out in her motion for rehearing that this court failed to discuss her contention that the answer made by the jury to Special Issue No. 6, by which the jury failed to find that the negligence of Dr. Joseph Goulding in failing to advise Mrs. Rita Traylor of the possibility that the chicken bone could be in the minor child's lung was a proximate cause of damage to the minor plaintiff, was contrary to the great weight and preponderance of the evidence. An affirmative answer to Special Issue No. 6 is not established as a matter of law. The evidence establishes that Mrs. Traylor told Dr. Goulding about the chicken bone on the two occasions he examined the child, and also told Dr. Smith about the incident when he subsequently examined the child. Both doctors were aware of the possibility that the bone could be in the child's lung. Whether Mrs. Traylor was aware of the possibility or not, she was diligent in seeking treatment for the child. She relied on the doctors to properly treat the child. It is not established that she would have followed a different course of action had she been informed of the possibility. Since the doctors were aware of the possibility, the treatment prescribed by them would not have been affected had Mrs. Traylor been more fully informed.

The motion for rehearing is overruled.