**Donna JACOBO, Appellant,**

v.

**Nir S. BINUR, M.D., Appellee.**

**No. 10–00–322–CV.**

Court of Appeals of Texas,
Waco.

Feb. 6, 2002.

Rehearing Overruled March 20, 2002.

331

Paul F. Waldner, Vickery & Waldner, L.L.P., Houston, for appellant.

Jo Ben Whittenburg, Gilbert I. Low and Greg C. Wilkins, Orgain, Bell & Tucker, L.L.P., Beaumont, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

This is a medical malpractice case. Donna Jacobo sued Dr. Nir S. Binur claiming that he failed to obtain her informed consent for a surgical procedure. The case went to trial, which resulted in a hung jury. The trial court declared a mistrial. Binur then moved for summary judgment, which the court granted. Jacobo brings this appeal complaining that the court erred in granting summary judgment. We will reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 1992, Donna Jacobo discovered a lump in her right breast. Jacobo was concerned because in 1978 and 1985 benign lumps had been removed from her breasts and because her mother had recently died from breast cancer. Jacobo's primary physician referred her to Dr. John Schmidt, a general surgeon. She brought a mammogram to her first meeting for Dr. Schmidt to examine.[1] Al-

1. A mammogram is an X-ray of the breast that helps a physician determine whether a

though Dr. Schmidt said the mammogram showed no presence of cancer, he recommended that she undergo a "prophylactic mastectomy." Also called a "preventative mastectomy," this is the removal of one or both breasts without the current presence of cancer. This surgery is sometimes chosen as a preventative measure by women who have a strong family history of breast cancer.

Dr. Schmidt explained to Jacobo that women who have a mastectomy will usually undergo plastic surgery to reconstruct the breasts. He referred her to Dr. Binur, a plastic surgeon. Jacobo alleges that before meeting with Dr. Binur, she was not convinced that the preventative mastectomy was a good idea. She met with Dr. Binur to discuss the possibility of reconstructing her breasts if she had the mastectomy.[2] Jacobo claims that during this meeting Dr. Binur said that it was not a matter of "if" she would develop breast cancer but a matter of "when." Dr. Binur denies ever making such a statement or words to that effect. Jacobo also claims that the deciding factor in her decision to have the mastectomy was Dr. Binur's assertion that she would definitely develop breast cancer in the future.

On March 17, 1993, Dr. Schmidt removed both of her breasts, and Dr. Binur reconstructed them, both procedures being performed uneventfully. Prior to the surgery Jacobo signed a single consent form, agreeing to both procedures and acknowledging she had been advised by both doctors of the risks involved in each. According to their testimonies, Dr. Schmidt was the lead surgeon during the mastectomy and assisted during the reconstructive procedure, and Dr. Binur was the lead surgeon during the reconstructive procedure and assisted during the mastectomy.

Jacobo had seven more surgeries on her breasts over the next three years because the initial reconstructive procedure was not successful. Rather than a medical malpractice claim for negligence in performing any of these surgeries, Jacobo brought an "informed-consent" claim against Dr. Schmidt and Dr. Binur asserting that the doctors over-represented her cancer risk, and therefore she was incapable of providing informed consent for the mastectomy. The trial court granted summary judgment for Dr. Schmidt, leaving only Dr. Binur as a defendant. The case went to trial, but the jury could not reach a decision and a mistrial was declared. Dr. Binur moved for summary judgment, and the court granted the motion. Jacobo's sole point of error asserts that the court erred in granting the summary judgment.[3]

## STANDARD OF REVIEW

Binur filed a dual motion for summary judgment: that is, one which raises both traditional and no-evidence summary judgment claims. Tex.R. Civ. P. 166a(c) & (i). In support of the motion, he attached excerpts of deposition testimony from various witnesses, an affidavit from Dr. Schmidt, and excerpts from Jacobo's hospital medical records. We have previously

---

lump is a gland, a harmless cyst, or a cancerous tumor.

2. Ultimately, Jacobo underwent a double mastectomy, both breasts being removed. The consent form labeled the procedure as a "bilateral simple mastectomy." Throughout the opinion we will refer to the procedure as a "mastectomy."

3. Under this issue, all grounds expressly raised in the summary judgment proceeding may be argued. *Ethridge v. Hamilton Co. Elec. Coop. Ass'n*, 995 S.W.2d 292, 294 (Tex. App.—Waco 1999, no pet.) (citing *Cove Investments, Inc. v. Manges*, 602 S.W.2d 512, 517 (Tex.1980)).

observed that a no-evidence summary judgment claim is one made without presenting summary judgment evidence to support the claim. *Williams v. Bank One, N.A.*, 15 S.W.3d 110, 116 (Tex.App.—Waco 1999, no pet.); *Ethridge v. Hamilton Co. Elec. Coop. Ass'n*, 995 S.W.2d 292, 295 (Tex.App.—Waco 1999, no pet.). Here, the claims that Binur's motion labels as "no-evidence" claims are presented with evidence.[4] Thus, we will treat Binur's motion as containing only traditional summary judgment claims, and we will examine the motion under the traditional summary judgment standard of review. *See Ethridge*, 995 S.W.2d at 294–95.

A party filing a motion for summary judgment must prove by summary-judgment evidence that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion." Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Delta Air Lines, Inc. v. Norris*, 949 S.W.2d 422, 425 (Tex.App.—Waco 1997, writ denied). When we review for whether a disputed material fact issue exists, we must accept as true all evidence favorable to the non-movant. *Nixon*, 690 S.W.2d at 548–49; *Delta Air Lines*, 949 S.W.2d at 425. In addition, we must resolve all doubts and indulge every reasonable inference in favor of the non-movant. *Nixon*, 690 S.W.2d at 549; *Delta Air Lines*, 949 S.W.2d at 425. A summary judgment is reviewed *de novo*. *Rucker v. Bank One Texas, N.A.*, 36 S.W.3d 649, 653 (Tex.App.—Waco 2000, pet. denied).

## INFORMED–CONSENT CLAIM

A cause of action for the failure of a physician to fully inform a patient of the risks of surgery is a negligence claim governed by the Medical Liability and Insurance Improvement Act (Act). Tex.Rev.Civ. Stat. Ann. art. 4590i, §§ 6.01–6.07 (Vernon Supp.2002). Section 6.02 of the Act states that the "only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." *Id.* § 6.02. The Act created the Texas Medical Disclosure Panel (Panel) to determine which risks and hazards must be disclosed to patients undergoing surgical procedures. *Id.* § 6.03(a). There is also a list of treatments and procedures for which no disclosure is required. *Id.* § 6.04(b). If the Panel has made no determination either way regarding a duty of disclosure for a particular treatment or procedure, the doctor is under the duty "otherwise imposed by law." *Id.* § 6.07(b).

4. Binur's motion describe his "no-evidence" claims in the following excerpts:

In the event that the Court finds that Dr. Binur was under a duty, either in whole or in part, to obtain plaintiff's informed consent for the mastectomy procedure, the summary judgment evidence establishes that plaintiff's informed consent for the procedure was properly obtained and there is no evidence to rebut the presumption of proper disclosure.

. . .

In the event that the Court holds that Dr. Binur was under such a duty, there is no evidence that any acts or omissions of Dr. Binur in connection with the informed consent process were a proximate cause of plaintiff's decision to undergo the mastectomy procedure. To the contrary, the summary judgment evidence conclusively establishes that the decision to perform the prophylactic mastectomy was one made by the plaintiff and her general surgeon, Dr. Schmidt. Thus, Dr. Binur's alleged acts, omissions, or recommendations with respect to the mastectomy procedure were not, and could not have been, the proximate cause of plaintiff's decision to undergo the mastectomy procedure or plaintiff's resulting injuries or damages, if any.

Here, Jacobo alleges that Binur failed to obtain her informed consent concerning the "simple" mastectomy. The Panel has not included the simple mastectomy on the list of surgical procedures requiring full disclosure. 25 Tex. Admin. Code § 601.2 (1995) (Texas Medical Disclosure Panel).[5] However, the simple mastectomy is not on the list of treatments or procedures for which no disclosure is required. *Id.* § 601.3. We interpret this to mean that the Panel has made no determination either way regarding a duty of disclosure for this surgical procedure. Tex. Rev.Civ. Stat. Ann. art. 4590i, § 6.07(b). Thus, a doctor who performs a simple mastectomy is under a duty of disclosure that is "otherwise imposed by law." *Id.* In *Peterson v. Shields*, the Supreme Court held that the duty "otherwise imposed by law" is the duty imposed by section 6.02 of the Act: "to disclose all risks or hazards which could influence a reasonable person in making a decision to consent to the procedure." *Id.* § 6.02; *Peterson v. Shields*, 652 S.W.2d 929, 931 (Tex.1983).

### DUTY

Whether a duty exists is a question of law to be determined from the specific facts in a case. *Greater Houston Transp. Co v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). The parties frame the issue as whether Dr. Binur was an assistant surgeon or more of a co-surgeon during the mastectomy. Dr. Binur argued in his summary judgment motion that as an assistant surgeon, he did not owe Jacobo a duty to obtain her informed consent for that procedure. In the response, Jacobo argued that Dr. Binur was a co-surgeon

for the entire surgery, consisting of the mastectomy and the reconstruction. Therefore, she says he owed her a duty to obtain her informed consent for the mastectomy, a component of the entire surgery. The trial court concluded from the summary judgment evidence that Dr. Binur did not owe her a duty to obtain informed consent for the mastectomy.

The duty of securing the patient's informed consent rests on the doctor treating the patient or performing the operation. *Espalin v. Children's Med. Center of Dallas*, 27 S.W.3d 675, 686 (Tex. App.—Dallas 2000, no pet.); *Weiser v. Hampton*, 445 S.W.2d 224, 231 (Tex. App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.). Moreover, the Act states that a physician has a duty to disclose "the risks and hazards involved in the medical care or surgical procedure *rendered by the physician* ..." Tex.Rev.Civ. Stat. Ann. art. 4590i, § 6.02 (Vernon Supp.2002) (emphasis added). This duty does not extend to a physician who refers the patient to another doctor for treatment or an operation and who does not participate in the care rendered to the patient. *Edwards v. Garcia–Gregory*, 866 S.W.2d 780, 783 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (citing *Johnson v. Whitehurst*, 652 S.W.2d 441, 445 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.)).

In addition, the duty to obtain a patient's informed consent for medical care does not extend to an assistant surgeon. *Weiser*, 445 S.W.2d at 230; *see also Rea v. Gaulke*, 442 S.W.2d 826, 830 (Tex.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.). In *Weiser*, the patient sued four doctors

---

5. As opposed to a "radical" or "modified radical" mastectomy. A "radical" mastectomy is the removal of all breast tissue, from just under the collar bone to the abdomen, including the chest wall muscles, and the axillary lymph nodes are also removed; a "modified radical" mastectomy is the removal of the breast tissue and the axillary lymph nodes. On the other hand, a "simple" mastectomy is the removal of one or both breasts, but not the lymph nodes.

who participated in three operations on her back. The patient claimed that one of the surgical procedures was performed without her informed consent. *Weiser,* 445 S.W.2d at 225. The patient sued the assistant surgeon who was granted a directed verdict by the trial court. *Id.* at 230. The appellate court recognized the following criteria that made the doctor an assistant:

- he was a resident doctor employed by the hospital and assigned to assist primary surgeons;
- he was to assist only if the attending surgeon was performing the procedure improperly;
- his duties included handing the surgeon sutures or whatever he needed;
- he did not perform any procedure on the patient; and
- he had no independent doctor-patient relationship with the patient.

*Id.* The court held that the patient's consent given to a surgeon who is performing an operation must be construed to include consent for him to secure such assistance furnished by the hospital as he may require. *Id.* Thus, the court affirmed the directed verdict in favor of the assistant surgeon because he had no independent duty to gain the patient's consent. *Id.*

In *Rea,* a patient sued both the primary surgeon and the assistant claiming: 1) the operation was performed without his informed consent in that he was not told that he might suffer the loss of a testicle, and 2) he would not have agreed to the operation if he had been so told. *Rea,* 442 S.W.2d at 827–28. On appeal, the patient complained that the trial court erred in withdrawing the case against the assistant surgeon from the jury. *Id.* at 828. The appellate court recognized the following facts regarding the assistant:

- he had not seen the patient before the surgery;

- he had not participated in procuring the patient's consent to the operation; and

- his purpose was to take care of any emergency that might exist with the surgeon in charge.

*Id.* at 829. Although the Houston court did not specifically address whether the informed-consent claim was actionable against the assistant surgeon, it upheld the trial court's decision to direct a verdict because there was no evidence that the assistant surgeon did or failed to do anything within the scope of his participation in the surgery that was either negligent or a cause of the plaintiff's injury. *Id.* at 830.

Dr. Binur argued to the trial court that the March 17th surgery consisted of two distinct surgical procedures, the mastectomy and the reconstruction. Accordingly, Binur argued that Dr. Schmidt was responsible for obtaining Jacobo's consent for the mastectomy, and Binur's duty was to obtain her consent for the reconstruction only. From this, Dr. Binur contended that he had no duty to obtain her consent for the mastectomy.

In deposition testimony attached to Jacobo's response, Dr. Binur testified that the "entire procedure" consisted of the mastectomy where Dr. Schmidt was the lead surgeon and he was the assistant, and the first stage of the reconstruction of the breasts where he was the lead surgeon and Dr. Schmidt was the assistant. Dr. Binur also testified that he believed that the "entire procedure" was medically necessary, and that he conveyed that sentiment to Jacobo by recommending she undergo the surgery. In trial testimony attached to Jacobo's response, Dr. Binur explained how he suggested to Dr. Schmidt that a simple mastectomy be done rather than a subcutaneous mastectomy. In the simple mastectomy the surgeon removes the

breast tissue and the nipple areola complex, but in the subcutaneous type the nipple areola complex is left intact. In trial testimony also attached to Jacobo's response, Dr. Schmidt testified that he was going to perform the type of mastectomy that Dr. Binur and Jacobo thought best. He admitted that the issue was whether to preserve the nipple areola complex. Jacobo underwent the simple mastectomy after signing the single consent form. The form describes the surgery to be performed as: "Bilateral simple mastectomy, tissue expanders." It lists the doctors for the surgery as: "Dr. Schmidt/Dr. Binur."

■ Considering the entire transaction involving Jacobo, Dr. Schmidt, and Dr. Binur, we find that Dr. Binur's contention that there is a clear distinction in the operating room between the mastectomy and the reconstruction is a simplistic view. The two doctors worked as a team in providing Jacobo information regarding the necessity of the entire surgery. The two doctors assisted each other in the operating room. Jacobo signed one consent form for the surgery, "Bilateral simple mastectomy, tissue expanders," naming both doctors. It is undisputed that Dr. Binur had a doctor-patient relationship with Jacobo. When Dr. Binur met with Jacobo prior to the March 17th surgery, one purpose of their meetings was to provide Jacobo with adequate information to help her decide whether to undergo the mastectomy and the reconstruction. Giving Jacobo the benefit of all doubts and inferences, as we must, we find that the summary judgment evidence conflicts about whether Dr. Binur was an operating surgeon during the mastectomy with a direct obligation to the patient or a doctor whose only role was to assist during the procedure. *Nixon*, 690 S.W.2d at 548–49; *Weiser*, 445 S.W.2d at 230; *Rea*, 442 S.W.2d at 830. As an operating surgeon

with a direct obligation to Jacobo, Dr. Binur would owe a duty to accurately disclose all risks or hazards which could have influenced her in making her decision to consent to the entire surgery, which included the mastectomy. TEX.REV.CIV. STAT. ANN. art. 4590i, § 6.02; *Peterson*, 652 S.W.2d at 931. Thus, we believe that the trial court erred in ruling that the summary judgment evidence conclusively demonstrated that Dr. Binur owed no duty to Jacobo regarding the mastectomy.

## BREACH OF THE DUTY

Dr. Binur argued to the trial court that even if he was under a duty to obtain Jacobo's informed consent for the mastectomy, the summary judgment evidence established that her informed consent was properly obtained, and there is no evidence to rebut a presumption of proper disclosure. Binur attached the written consent form that Jacobo signed prior to surgery to the summary judgment motion. The second paragraph of the form states:

> *My doctor described the risks, complications and consequences of the proposed surgery/procedure/treatment,* including the possibility of infection, blood clots in veins and lungs, hemorrhage, allergic reactions and even death. *My doctor discussed alternatives available and their risks, complications and consequences, including the option of no surgery/procedure/treatment.* I understand that complications may result and that no guarantees of success can be made. Unknown conditions or complications may be present, and these may require the judgment of my doctor and consultants selected by my doctor as to care to be rendered. (Emphasis added).

In the fifth paragraph of the form, Jacobo expressly gave her consent to the surgical procedure. The form ends with Jacobo's signature acknowledging that she had

"been given the opportunity to satisfy" herself "by asking questions about this form and its importance." The form was also signed by a witness. Dr. Binur also characterized the "risk" of which Jacobo complains to be the surgical removal of her breasts and contends that this "risk" was disclosed in the consent form.

■ In *Earle v. Ratliff*, the Supreme Court held that if the physician has obtained the patient's signature on a consent form which enumerates the risks that the Panel has determined should be disclosed, the only means by which the patient may recover for failure to obtain informed consent is to prove the invalidity of the consent form, such as by proof that the patient's signature is forged, or that the patient lacked capacity to sign. *Earle v. Ratliff*, 998 S.W.2d 882, 891–92 (Tex. 1999). The plaintiff in *Earle* underwent a surgical procedure in which the Panel had determined what risks should be disclosed. *Id.* at 891. The consent form the plaintiff signed enumerated the risks the Panel had determined were necessary. *Id.* Jacobo underwent a surgical procedure in which the Panel has not made a determination regarding the duty of disclosure, and therefore it has not determined what risks are to be disclosed. Thus, the holding in *Earle* is inapplicable here, and there is no presumption of proper disclosure.

### The "Risk" Jacobo Contends Should Have Been Disclosed

Jacobo's response argued that the "risk" she was not properly made aware of was that the mastectomy might have been unnecessary. In her affidavit attached to the response, she claims that when she questioned Dr. Binur about her risk of developing breast cancer, he told her that it was not a matter of "if" she would develop it but a matter of "when." She also stated that "because of the information that was given to me by Dr. Binur—that breast cancer was a certainty—I consented to the procedure." In other words, Dr. Binur essentially told her that there was no risk that the mastectomy was unnecessary because it was a certainty that she would develop breast cancer.

Also attached to the response was deposition testimony from Jacobo's medical expert witness, Dr. Sharon Webb. Dr. Webb testified that Dr. Binur inadequately evaluated Jacobo's risk for breast cancer and did not sufficiently discuss with her what the nature of her condition was. Dr. Webb stated the risk of Jacobo's developing breast cancer was not 100%. Dr. Webb said that Dr. Binur should have at least ordered a biopsy of the lump in her breast to determine whether cancer was present. Dr. Webb also said that because Dr. Binur did not provide Jacobo with a more accurate description of her risk for breast cancer, she was not in a position to make an informed choice. Dr. Webb had this to say regarding Jacobo's state of mind in deciding whether to have the mastectomy done:

> Well, that state of mind based on losing your mom, you know, people are going to have a lot of different emotional reactions to that but most of those reactions are going to be powerful. She is considering surgery for a disease that was just recently what carried her mom away. How can that help but to have an important emotional impact. Somebody with a difficult state of mind or a unfortunate state of mind or however you want to characterize it needs more attention, more informed consent in the broadest possible term, use of that term, more input with consultation from other people, more support and not necessarily kind of the straight ahead connection of condition and surgery that it looks like Donna received in this case.

This is not an emergency. She's got lots of time to evaluate her options. She's at a very emotionally critical and, you know, likely traumatized time in her history, in her personal history, so, you know, let's take things slowly, let's get as much support for her as she can as we can marshal so that she can, you know, ultimately make a well reasoned decision.

In his deposition testimony, Dr. Binur conceded that he had not done a thorough evaluation of her breast cancer risk.

■ Jacobo's summary judgment affidavit states: "I consented to having my breasts removed from my body because Dr. Binur convinced me that if I didn't, I would die from breast cancer." We take Jacobo's summary judgment evidence as true. *Nixon*, 690 S.W.2d at 548–49. We note that a general principle underlying the concept of informed consent is the idea that true consent to what happens to one's body is the informed exercise of a choice, and that entails an opportunity to evaluate knowledgeably the options presented to you and the risks attendant upon each. *Karp v. Cooley*, 493 F.2d 408, 419 (5th Cir.1974); *see also Wilson v. Scott*, 412 S.W.2d 299, 301 (Tex.1967). We conclude that Jacobo's summary judgment affidavit raises a fact issue about whether Dr. Binur failed to disclose the risk that the mastectomy might have been unnecessary, and thus, whether such failure "could have influenced a reasonable person in making a

decision to give or withhold consent." TEX. REV.CIV. STAT. ANN. art. 4590i, § 6.02.[6]

## PROXIMATE CAUSE

■ Finally, Dr. Binur asserted in his summary judgment motion that even if he breached a duty of informed consent it was not a proximate cause of Jacobo's decision to undergo the mastectomy. In *McKinley v. Stripling*, the Supreme Court stated that an informed-consent claim must comport with the traditional notions of liability in negligence cases. *McKinley v. Stripling*, 763 S.W.2d 407, 409 (Tex. 1989). Thus, an informed-consent claim requires a finding of a duty, a breach of that duty, that the breach was a proximate cause of the alleged injuries, and that damages occurred. *Id.* The Court held that the element of proximate cause of the alleged injuries must be framed as follows: whether a reasonable person would have refused the treatment or procedure had he been fully informed of all inherent risks which would influence his decision. *Id.* at 410. Dr. Binur's motion for summary judgment contended that the summary judgment evidence established that the decision to undergo the mastectomy was made by Jacobo and Dr. Schmidt. Thus, he argued that his alleged acts, omissions, or recommendations with respect to the mastectomy were not, and could not have been, a proximate cause of Jacobo's deci-

---

**6.** We acknowledge that our sister court in Fort Worth refused to hold a doctor liable under an informed-consent theory where a patient had alleged that the doctor misdiagnosed him and performed an unnecessary surgery. *Patton v. Saint Joseph's Hosp.*, 887 S.W.2d 233, 247 (Tex.App.—Fort Worth 1994, writ denied). The Fort Worth court of appeals refused to so hold because it said that the following language from section 6.02 of the Act did not provide for such a claim: "... the only theory on which recovery may be obtained [under an informed consent cause of action] is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent." *Id.* at n. 12; TEX.REV.CIV. STAT. ANN. art. 4590i, § 6.02. However, we find that the facts in Jacobo's case as established by the summary judgment evidence constitute an informed-consent theory expressly provided for in section 6.02.

sion to undergo the procedure or her resulting injuries or damages, if any.

Jacobo's affidavit attached to her response rebuts the assertion that the decision to undergo the mastectomy was influenced only by Dr. Schmidt. Her affidavit claims that she decided to undergo the mastectomy based on the information that Dr. Binur gave her, specifically his assertion that "breast cancer was a certainty." The question is whether Jacobo would have refused the mastectomy had she been fully informed of all inherent risks which would influence her decision, specifically that she might lose her breasts when it was unnecessary. A risk inherent to the mastectomy is whether the procedure is necessary. This is determined in Jacobo's case by evaluating her breast cancer risk. Jacobo has alleged that Dr. Binur did not fully and correctly inform her regarding both the necessity of the mastectomy and her breast cancer risk. Based on Jacobo's affidavit and taking her evidence as true, we find there is a fact issue regarding whether a reasonable person would have refused the mastectomy had she been accurately informed of the risk that the procedure might be unnecessary. *Nixon*, 690 S.W.2d at 548.

## CONCLUSION

Finding fact issues regarding each element of Jacobo's claim that Dr. Binur attacked in his motion for summary judgment, we sustain Jacobo's sole point of error and hold that the trial court erred in granting the summary judgment. Accordingly, we reverse the summary judgment and remand the cause for further proceedings.

Justice GRAY dissenting.

GRAY, Justice, dissenting.

Bad facts make bad law. This is such a case.

There is a difference between a medical malpractice case based on the failure to obtain "informed consent" and a case based on negligent diagnosis and recommended course of treatment. We should make that distinction in this case. As presented, the evidence in this case is about negligent diagnosis and recommended course of treatment, not informed consent. Everyone agrees the patient only asserted an informed consent cause of action. But the patient is not complaining about the occurrence of a risk about which she was not informed. The patient is complaining that she did not need the surgery. The trial court did not err in granting summary judgment.

## BACKGROUND

Jacobo's specific complaint in this case is that she was not advised that she might not need to have both breasts removed to avoid cancer. The summary judgment evidence, which in this summary judgment proceeding we must take as true, is that Binur did not adequately evaluate her medical history for the risk of cancer and then told her that she would develop cancer in her breasts, and if not treated, she would die as a result. When we attempt to fit this evidence within the claim Jacobo is asserting, it is readily apparent that there has been no occurrence of a "risk" of which Jacobo had not been informed. Negligent evaluation, diagnosis, or treatment is not an informed consent cause of action, which is the only claim asserted by Jacobo.

## INFORMED CONSENT

We must begin with the informed consent statute. The failure to obtain consent for a particular medical procedure was traditionally brought as a common law claim for battery—a harmful or offensive touch-

ing without permission. *See Greene v. Thiet*, 846 S.W.2d 26 (Tex.App.—San Antonio 1992, writ denied). In the medical malpractice area, this theory is based upon the doctor's failure to disclose the various risks of the medical procedure. The theory was that without fully disclosing the risk, the patient's consent to the procedure was not effective, therefore the procedure was a battery upon the patient by the doctor.

In response to this growing line of cases, the legislature enacted the "Informed Consent" subchapter of the Medical Liability and Insurance Improvement Act of Texas. TEX.REV.CIV. STAT. ANN. art. 4590i (Vernon Supp.2002). The statute defines a cause of action for the failure to disclose a risk or hazard to the patient and limits the application of the theory to the occurrence of a risk or hazard not disclosed. The statute is as follows:

> Sec. 6.02. In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

*Id.* at § 6.02.

The statute has been interpreted to define a cause of action consisting of the following elements:

1. That the physician or health care provider failed to disclose a risk or hazard of the procedure;

2. That the risk or hazard not disclosed was inherent in the procedure;

3. That the risk or hazard was material in the sense of one which could influence a reasonable person in making a decision to give or withhold consent to the procedure;

4. That the patient actually developed the risk or hazard not disclosed; and

5. That the failure to disclose the risk or hazard was a proximate cause of injury to the patient.

*See McKinley v. Stripling*, 763 S.W.2d 407, 409 & 410 (Tex.1989); *Barclay v. Campbell*, 704 S.W.2d 8, 9–10 (Tex.1986); and *Peterson v. Shields*, 652 S.W.2d 929, 931 (Tex.1983). In *McKinley*, Justice Mauzy complained in his dissent about the addition of the fifth element, proximate cause, contending that the statute did not require it. *McKinley*, 763 S.W.2d at 410.

There are two different ways to analyze the particular issue in this case. The first alternative is that Jacobo was informed that a risk or consequence of the surgery was that her breasts would be removed, her breasts were in fact removed, she is now complaining about the removal of her breasts, but because she was informed of that consequence (risk or hazard), as a matter of law there was informed consent for the removal of her breasts. *See Tajchman v. Giller*, 938 S.W.2d 95, 99–100 (Tex. App.—Dallas 1996, writ denied); *Jones v. Papp*, 782 S.W.2d 236, 241 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *Hartfiel v. Owen*, 618 S.W.2d 902, 905 (Tex.App.—El Paso 1981, writ ref'd. n.r.e.). This is not a logical analysis and is only necessary if this case is forced into the informed consent construct. But if this case is forced into the informed consent construct, because removal of her breasts was a consequence of the procedure of which Jacobo was informed, I would hold that Binur proved as a matter of law that the duty to disclose the risk or hazard of the surgery was fulfilled. I would further

hold that it is immaterial who fulfills the duty of disclosure, so long as the patient is advised of the possible consequence, it is not necessary for every doctor involved in the surgery to separately make the required disclosure.

However, the proper way to analyze the issue in this case is that while misdiagnosis and mistreatment might constitute negligence, it does not constitute failure to make the required disclosure. *Marling v. Maillard*, 826 S.W.2d 735, 738 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Brown v. Armstrong*, 713 S.W.2d 725, 727 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). The Medical Act does not allow us to hold a doctor liable under an informed consent theory when a patient is misdiagnosed and unnecessary surgery is performed. *Patton v. Saint Joseph's Hospital*, 887 S.W.2d 233, 247 (Tex.App.—Fort Worth 1994, writ denied). This is precisely what the majority of this court has allowed Jacobo to do. I would not. Accordingly, I respectfully dissent.

### NO–EVIDENCE SUMMARY JUDGMENT

I must also address the majority's decision to review a no-evidence motion for summary judgment under the standard of review applicable to a traditional summary judgment motion. Binur's summary judgment motion began with a traditional motion and set out the various grounds on which Binur moved for summary judgment, contending that the summary judgment proof affirmatively negated elements of Jacobo's informed consent claim. The motion then identified the evidence upon which the traditional motion for summary judgment was based. Then, under a new heading, in a clearly separate section of the motion, Binur moved for a no-evidence summary judgment, identifying two specific issues on which Binur asserted there

was no evidence. These two elements were that there was no evidence to rebut the presumption that informed consent was obtained and there was no evidence to establish proximate cause in support of her claim.

### LOOSE REFERENCE SINKS NO–EVIDENCE MOTION?

The majority concludes that simply because some evidence was referenced or presented "we will treat Binur's motion as containing only traditional summary judgment claims, and we will examine the motion under the traditional summary judgment standard of review." (Majority opinion at page 333). But the motion does not rely on the evidence referenced. For example, with regard to the proximate cause issue, Binur asserts that not only is there no evidence to establish proximate cause, he also asserts that the only evidence is to the contrary. Basically, acting in the role of an advocate, in Binur's no-evidence motion for summary judgment, he references evidence he believes supports the argument that there is no evidence that his failure to provide the required disclosure was the proximate cause of Jacobo's injury. In essence, the majority holds that if any evidence is referenced, it cannot be a no-evidence motion for summary judgment. This virtually eliminates the ability to bring a dual motion for summary judgment—a traditional summary judgment motion and a no-evidence summary judgment motion in the same document.

Because the majority "treats" the no-evidence motion as a traditional motion for summary judgment, the review of the no-evidence summary judgment in this case is conducted using an improper standard of review. The application of the traditional summary judgment standard disregards Rule 166a(i) and is not a proper reading of

*Williams* and *Ethridge*. *Williams v. Bank One, N.A.*, 15 S.W.3d 110, 116 (Tex. App.—Waco 1999, no pet.); *Ethridge v. Hamilton Co. Elec. Coop. Ass'n*, 995 S.W.2d 292, 295 (Tex.App.—Waco 1999, no pet.).

### Explicitly Stated in the Motion

In *Ethridge*, we noted that there had been some confusion regarding implementation of the no-evidence motion for summary judgment rule. *Id.* We had noted instances in which a party would argue to the trial court, or on appeal, that there was no evidence to support an element of a claim. In some instances, it was not clear whether the movant was attempting to prove as a matter of law that there was no evidence or whether the movant was attempting to shift the burden of going forward with presenting some evidence of the element on the non-movant by bringing a no-evidence summary judgment motion pursuant to Rule 166a(i). To clarify this confusion we noted that a movant "should explicitly state that it is a 'no-evidence' motion under Rule 166a(i)." *Ethridge*, 995 S.W.2d at 295.

Binur's motion is very explicit. The motion has a section captioned: "**IV. THE STANDARD OF REVIEW FOR A MOTION FOR SUMMARY JUDGMENT UNDER RULE 166a(b) AND RULE 166a(i).**" Binur's motion then cites Rule 166a(i) four times in the second paragraph under this heading in which it alleges there is no evidence on two specified issues. This is sufficiently explicit under *Ethridge* to constitute a no-evidence summary judgment motion under Rule 166a(i). It is more explicit than what we held as adequate in *Williams*. *Williams*, 15 S.W.3d at 116.

### Dual Motions

Dual motions on different issues will occur in situations where the movant may have attached evidence to support one ground, for example an affirmative defense, but also moved for judgment on the ground that the non-movant has no evidence of a particular element of the non-movant's claim. No-evidence summary judgment motions may also be brought on the same ground, and in the same document, as a traditional motion. What is clearly a no-evidence motion cannot be disregarded, or "treated" as a traditional motion, because of a reference to summary judgment evidence on which the no-evidence motion does not rely—evidence which is unnecessary to properly grant the no-evidence summary judgment motion.

### Reliance v. Persuasion—a fatal reference?

One of the problems the no-evidence motion was designed to eliminate was the difficulty of proving a negative. A movant may file a traditional summary judgment motion upon the belief the evidence proves that a state of facts necessary for the non-movant to prevail does not exist as a matter of law. In essence, that the evidence negates an element of the non-movant's claim as a matter of law. But as a fall-back position, the movant may also bring a no-evidence summary judgment motion that the non-movant has no evidence by which it can establish that the state of facts necessary to prevail exist.

The no-evidence motion in this case is an example of arguing this type of fall-back position as a no-evidence motion for summary judgment and referencing evidence to persuade the reader the non-movant has no evidence in support of the issue. The motion the majority "treats" as a traditional motion is as follow:

> In the event that the Court holds that Dr. Binur was under such a duty, there is no evidence that any acts or omissions of Dr. Binur in connection with the informed consent process were a proxi-

mate cause of plaintiff's decision to undergo the mastectomy procedure. To the contrary, the summary judgment evidence conclusively establishes that the decision to perform the prophylactic mastectomy was one made by the plaintiff and her general surgeon, Dr. Schmidt. Thus Dr. Binur's alleged acts, omissions, or recommendations with respect to the mastectomy procedure were not, and could not have been, the proximate cause of plaintiff's decision to undergo the mastectomy procedure or plaintiff's resulting injuries or damages, if any.

The filing of a no-evidence motion should not prohibit all references to evidence which tends to show there is no-evidence on the issue. After all, it is the nature of the advocate's role to argue in support of the position that there is no-evidence. It is absurd to hold that by including the middle sentence of the above quoted paragraph, Binur converted what would otherwise be a proper no-evidence summary judgment motion to a traditional summary judgment motion.

### Application of the Standards of Review in General

If a traditional and no-evidence motion are based on the same ground, a review of only the traditional motion under the standard of review applicable to traditional motions is proper if it results in reversal of the summary judgment. This is because if there is a fact issue presented in the response on the ground raised in the traditional motion that would result in a reversal of the judgment on that ground, there is obviously a fact issue presented in the response to the same ground raised in the no-evidence motion.

But if the traditional motion cannot be affirmed because the movant failed to establish entitlement to judgment as a matter of law, it is nevertheless necessary to conduct a review of the no-evidence motion. If the non-movant failed to respond to the no-evidence motion, or failed to point out some evidence in support of the issue in the response, the summary judgment based on the no-evidence motion for summary judgment should be affirmed. Tex.R. Civ. P. 166a(i). We cannot change the substance of what the motion is just because the movant made reference to evidence in support of the argument that the non-movant has no evidence on that ground for summary judgment.

### Application of the Proper Standard of Review

The appropriate standard of review applicable to a no-evidence summary judgment motion is very important to this particular case. Binur moved for summary judgment on the ground that Jacobo had no evidence that Binur's alleged failure to disclose the risk of the surgery was the proximate cause of injury to Jacobo. The authoritative commentary to Rule 166a(i) provides that the response must "point out evidence that raises a fact issue on the challenged elements." Tex.R. Civ. P. 166a(i). Jacobo's response does not purport to respond to the no-evidence motion for summary judgment on proximate cause and thus does not "point out evidence" on proximate cause. If the rule means what it says, then the trial court properly granted summary judgement on the basis that Jacobo did not respond to the no-evidence motion for summary judgment on proximate cause filed by Binur.

Accordingly, I respectfully dissent from the majority opinion wherein it purports to review the no-evidence motion for summary judgment under the standards applicable to a traditional motion for summary judgment and holds that Jacobo raised a fact issue on proximate cause.

## CONCLUSION

There is no doubt that Jacobo has suffered as a result of her surgeries. But I cannot force her facts into an informed consent claim. Likewise, I cannot ignore the fact she did not respond to the no-evidence summary judgment motion on proximate cause. Accordingly, I would have to affirm the trial court's summary judgment.