Larry Joe COLVIN, Petitioner,

v.

RED STEEL COMPANY, Respondents.

No. C–3167.

Supreme Court of Texas.

Dec. 12, 1984.

Jack B. Cowley, Tommy K. Davis, Dallas, for petitioner.

Russell W. Schell, Dallas, for respondent.

WALLACE, Justice.

This is a personal injury case based upon allegations of negligence and strict liability. Larry Joe Colvin (Colvin) was an ironworker employed by D.R. Smith, a steel erection company. Colvin was working on a building being constructed by Robert E. McKee, Inc. (McKee), the general contractor. Red Steel Company (Red Steel) was the fabricator of the steel trusses and purlins used in the building. At the close of evidence, the trial court rendered an instructed verdict for McKee and Red Steel. McKee settled during appeal to the court of appeals. The court of appeals affirmed the judgment of the trial court. 671 S.W.2d 556. We affirm the judgment of the court of appeals.

The building in question was constructed with concrete columns to which were attached supporting steel trusses. Steel purlins were to be laid along the top of and welded to the trusses. The purlins, used only as spacer material, separated the trusses from the roof. The architect's specifications required 30 purlins, measuring 49 feet 11¾ inches in length and weighing approximately 660 pounds. Red Steel supplied seven purlins of the specified length but filled the rest of the order with shorter pieces. Although McKee and the architect accepted the shorter pieces which were used in the building, neither one authorized Red Steel to change the length of the purlins.

While atop one of the concrete columns, Colvin was attaching a truss to the column. In an attempt to raise himself to an upright position, he reached overhead and grasped a purlin laying atop another truss already in place. The purlin came off the truss and Colvin fell 16 feet to the concrete floor. The purlin which Colvin grasped was eight

feet long and weighed approximately 88 pounds. The issues are whether there is some evidence that Red Steel was negligent in supplying the shorter purlins or whether Red Steel was strictly liable for supplying the shorter purlins.

## NEGLIGENCE

■ To determine whether it was proper for the trial court to instruct a verdict for Red Steel, we must view the evidence in the light most favorable to Colvin. We must indulge against the instruction every inference that properly may be drawn from the evidence, and if the record reflects any testimony of probative force in favor of Colvin, we must hold the instruction improper. *White v. White*, 141 Tex. 328, 172 S.W.2d 295 (1943).

■ To sustain a cause of action for negligence it is necessary to produce evidence of a duty, a breach of that duty, proximate cause and damage. *Fort Worth & Denver City Ry. Co. v. Rogers*, 62 S.W.2d 151 (Tex.Civ.App.—El Paso 1933, writ ref'd). The duty Red Steel owed Colvin was to act as a reasonable prudent person would act under the same or similar circumstances regarding any reasonably foreseeable risk. *Great Atlantic & Pacific Tea Co. v. Evans*, 142 Tex. 1, 175 S.W.2d 249 (1943).

Red Steel's cutting orders, which became part of the contract with McKee, complied with the architect's specifications requiring the purlins to be 49 feet 11¾ inches in length. There was testimony that it would take two men to move a purlin of the specified length, however, the eight foot purlin was easily moved by Colvin alone. Colvin testified that when the ironworkers worked with the shorter purlins, they had to lay them across two trusses "... so they wouldn't fall off of or somebody would come and kick them off." He further testified that, "When we put the short purlins [up], we always laid them down on their side like this where they wouldn't get kicked over or knocked over and fall off or anything." Colvin contends there is some evidence that the shorter purlins created a more dangerous condition in the work place than the longer ones. Although the record does not disclose the number, there is evidence that the architect's plans specify a number of shorter purlins in addition to the 30 longer ones mentioned above.

Colvin's expert, Mr. Zetterlund, a professional structural engineer, testified that the standards of the Associated General Contractors of America, Inc. require that any steel which is raised in place on a building be secured immediately. Colvin's Exhibit 44, a portion of a manual on accident prevention published by the Associated General Contractors of America, Inc., states, "In setting steel each piece should be securely bolted before the line is taken off."

Colvin testified that about a week before the accident occurred, he and a fellow employee were working on the uppermost level of the structure. He further testified that: the two of them received all of the purlins from the crew working on the ground; that they placed the purlins atop the trusses; laid the purlins on their sides, and left them there.

In order for Red Steel to have foreseen the probability of an accident occurring because the purlins were cut in shorter lengths than specified, it must have also foreseen that Colvin and his fellow workers would violate the standards of the Associated General Contractors of America, Inc., by not securing the purlins when they were placed atop the trusses. There is no evidence in the record which will support such finding.

Colvin relies upon *Bennett v. Span Industries, Inc.*, 628 S.W.2d 470 (Tex.Civ. App.—Texarkana 1981, writ ref'd n.r.e.). That case is distinguishable from the present one. Span actually created the opening through which Bennett fell. In the present case, Colvin and his fellow employees created the condition which contributed to Colvin's fall. In *Span*, there was evidence that Span knew there would be men working around the openings which it created, that contractors generally provided covers or guard rails for such openings,

and that OSHA regulations required either covers or guard rails for those openings. There is no evidence of a similar nature in this case.

Colvin also relies on *Texas Industries, Inc. v. Lucas*, 634 S.W.2d 748 (Tex. Civ.App.—Houston [14th Dist.] 1982), *rev'd on other grounds*, —— S.W.2d ——, 27 Tex.Sup.Ct.J. 491, July 14, 1984. That case is also distinguishable. In *Texas Industries*, the concrete beam contained inserts which were to be used solely for lifting the beams. There also was evidence that the fabricator of the beams knew that the inserts would be used for lifting the beams and that all of the beams were to contain identically sized inserts. It was foreseeable that if one beam contained a differently sized insert, an accident could occur while the beam was being lifted. In this case, Colvin used the shorter purlin in a manner which was not foreseeable by Red Steel. First, he put it on the truss without attaching it by a tack-weld, and second, he used it to pull himself to an upright position. There is thus no evidence of foreseeability on the part of Red Steel which sustains a finding of proximate cause. Without a finding of proximate cause, no cause of action for negligence exists.

### STRICT LIABILITY

An essential element of Colvin's strict liability cause of action is a finding that the product was not fit for its intended or reasonably foreseeable use at the time it left the manufacturer. The purlins were intended to be welded to the top of the trusses and were to serve as spacers between the trusses and the roof material. The uncontroverted evidence proved that the purlins were fit for the intended purpose of providing a spacer between the trusses and the building roof when they left Red Steel. The question remaining is whether Red Steel reasonably could have foreseen that the purlins would be placed atop the trusses, left there unattached, violating the safety standards of the Associated General Contractors of America, Inc., and then used by a skilled ironworker to pull himself upright. Red Steel could not reasonably have foreseen such a use. The purlins were used for the intended purpose and there is no evidence of any other intended or foreseeable use. The dangerous condition which contributed to Colvin's fall was created on the jobsite not by Red Steel, but by Colvin, his fellow employees and McKee.

We affirm the judgment of the court of appeals.