Billie Ann ALLEN, As Next Friend
of B.A., A Minor, Appellants,

v.

Frances ALBIN and Gladys
Haferkamp, Appellees.

No. 10–01–063–CV.

Court of Appeals of Texas,
Waco.

Dec. 31, 2002.

Jim Hering, Pakis, Giotes, Page & Burleson, P.C., Waco, for Appellants.

John A. Stephens and David Johnson, Fulbright Winniford, Waco, James A. Lawrence, Flowers, Davis, Menard & Witt, P.L.L.C., for Appellees.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

This is a personal injury case. Billie Ann Allen, as next friend of Bradley Allen, a minor, sued Frances Albin (the dog's owner) and Gladys Haferkamp (Bradley's baby-sitter) for damages as a result of an injury inflicted by a dog. Both Albin and Haferkamp filed summary-judgment motions that were granted by the trial court. Allen argues that the trial court erred in granting the defendants' motions. We will reverse the judgment in part and affirm it in part.

## FACTUAL AND PROCEDURAL BACKGROUND

During 1985, Gladys Haferkamp provided day-care services to Jack and Billie Ann Allen by caring for their seventeen-month-old son, Bradley Allen. Haferkamp ran a day-care business at her home in Waco, where she took care of Bradley and two other children. Frances Albin lived next door to Haferkamp and their backyards were adjacent to one another, separated by a chain-link fence. Albin kept a dog in her backyard. On November 13, 1985, Bradley was bitten or scratched by the dog as he was standing next to the chain-link fence. The dog apparently attacked Bradley through the fence. Although Haferkamp was standing near Bradley, she did not see the dog in time to prevent the attack. As a result, Bradley suffered lacerations to his face. He was taken to the hospital where he received stitches to close the lacerations.

In 2000, Bradley, on his physician's recommendation, began to consider cosmetic surgery to reduce or remove the residual scarring caused by the lacerations. In May of that year, on Bradley's behalf, his mother brought this suit against Albin and Haferkamp seeking compensation for her son's injuries. Because Albin had died, Allen sued her heirs.[1]

After some discovery, the defendants filed summary-judgment motions. Tex.R. Civ. P. 166a. Allen filed responses to both motions and offered evidence to support her claims. Albin filed a written motion objecting to part of Allen's summary-judgment evidence, and the day the summary-judgment hearing was scheduled, Allen asked for a continuance seeking more time to cure possible defects in her summary-judgment evidence. The court granted the request and set the hearing for a later date. Allen then filed supplemental responses to both Albin's and Haferkamp's

---

1. Because an estate of a decedent is not a legal entity, a suit against an estate must name its legal representative. *Henson v. Estate of Crow,* 734 S.W.2d 648, 649 (Tex.1987). If the legal representative is unavailable, however, a plaintiff may properly sue the heirs or beneficiaries. *Rooke v. Jenson,* 838 S.W.2d 229, 230 (Tex.1992). According to the petition, Albin's heirs are her children: Lawton Albin, Mary Henderson, and Darlene Yarbrough. For convenience, throughout the opinion we will refer to these defendants collectively as "Albin."

summary-judgment motions and offered additional evidence. Albin again filed a written motion objecting to part of Allen's evidence. Shortly thereafter, the court held a hearing on the defendants' summary-judgment motions and also on Albin's objections to Allen's evidence. At the end of the hearing, the court granted both summary-judgment motions. On appeal, Allen contends that the trial court erred in doing so.

## SUMMARY JUDGMENT IN FAVOR OF ALBIN

We initially address Allen's issue concerning the trial court's granting of Albin's no-evidence summary-judgment motion. We must also discuss a related issue involving Albin's objections to Allen's summary-judgment evidence.

### STANDARD OF REVIEW

■ We review a summary judgment *de novo*. *Rucker v. Bank One Texas, N.A.*, 36 S.W.3d 649, 653 (Tex.App.-Waco 2000, pet. denied) (citing *Sasser v. Dantex Oil & Gas, Inc.*, 906 S.W.2d 599, 602 (Tex. App.-San Antonio 1995, writ denied)). We apply the same standard in reviewing a no-evidence summary judgment as we would in reviewing a directed verdict. *Robinson v. Warner–Lambert*, 998 S.W.2d 407, 410 (Tex.App.-Waco 1999, no pet.). We review the summary-judgment evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* A no-evidence summary judgment will be defeated if the non-movant produces more than a scintilla of probative evidence to raise a genuine issue of material fact on the elements challenged by the movant. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied).

More than a scintilla of evidence exists "if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds" about a vital fact's existence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). On the other hand, no more than a scintilla of evidence "exists when the evidence offered to prove a vital fact is so weak so as to do no more than create a mere surmise or suspicion of its existence and, in legal effect, is no evidence." *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.*, 29 S.W.3d 282, 284–85 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (citing *Kindred*, 650 S.W.2d at 63).

■ The trial court granted the motion without stating the specific reasons for doing so. When the trial court does not specify the basis for a no-evidence summary judgment, the appealing party must show it is error to base it on any no-evidence ground asserted in the summary-judgment motion. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

### ALLEN'S CLAIMS

Allen pled two claims against Albin: (1) a strict liability claim; and (2) a negligence claim for injuries caused by the negligent handling of the dog.[2]

*Strict liability*

■ Allen alleged that Albin was strictly liable for Bradley's injuries because she knew or should have known that her dog was capable of causing injury to others. Under Texas law, strict liability is imposed only in very limited situations, such as in products liability cases involving dangerously defective products or cases involving a dangerous domesticated animal. *E.g., Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex.1996)

**2.** As stated in Allen's Second Amended Original Petition filed on January 5, 2001.

(involving defective products); *Marshall v. Ranne*, 511 S.W.2d 255, 258 (Tex.1974) (involving animals known to be vicious). The elements of a strict liability claim for injury by a dangerous domesticated animal are: (1) the defendant was the owner or possessor of the animal; (2) the animal had dangerous propensities abnormal to its class; (3) the defendant knew or had reason to know the animal had dangerous propensities; and (4) those propensities were a producing cause of the plaintiff's injury. *Owens v. Coury*, 614 S.W.2d 926, 928 (Tex.Civ.App.-Amarillo 1981, no writ) [3]; *Wells v. Burns*, 480 S.W.2d 31, 33 (Tex. Civ.App.-El Paso 1972, no writ).

### Negligent handling of an animal

■ With respect to the negligence claim, Allen contended that Albin owed a duty to ensure that her dog would not cause injury to anyone. Allen claimed that Albin breached that duty by failing to take "reasonable steps" to prevent the dog's contact with Bradley. The elements of an action for injuries caused by the negligent handling of an animal are: (1) the defendant was the owner or possessor of an animal; (2) the defendant owed a duty to exercise reasonable care to prevent the animal from injuring others; (3) the defendant breached that duty; and (4) the defendant's breach proximately caused the plaintiff's injury. *Marshall*, 511 S.W.2d at 259 (elements 1, 4); *Dunnings v. Castro*, 881 S.W.2d 559, 561–62 (Tex.App.-Houston [1st Dist.] 1994, writ dism'd) (elements 2, 3). Unlike for strict liability, the plaintiff does not have to prove that the animal was vicious or dangerous. *Dunnings*, 881 S.W.2d at 562–63; *see Pearson v. Jones Co.*, 898 S.W.2d 329, 332 (Tex.App.-Eastland 1994, no writ) (owner may be liable

for negligence in the handling of a non-vicious or non-dangerous animal).

### ALBIN'S SUMMARY-JUDGMENT MOTION

Albin filed a no-evidence summary-judgment motion claiming she was entitled to summary judgment because Allen could not produce any evidence of some of the elements of her two claims.

### Challenged elements of the strict liability claim

Albin did not contest the first element of Allen's strict liability claim, *i.e.*, whether Albin was the owner or possessor of the animal. *Owens*, 614 S.W.2d at 928; *Wells*, 480 S.W.2d at 33. Albin's motion challenged Allen to produce evidence of the second, third, and fourth elements: (2) the dog had dangerous propensities abnormal to its class; (3) Albin knew or had reason to know the animal had dangerous propensities; and (4) those propensities were a producing cause of the plaintiff's injury. *Id.* Accordingly, Allen was required to produce summary-judgment evidence that raised a fact issue on each of the three challenged elements. TEX.R. CIV. P. 166a(i).

### Challenged elements of the negligence claim

Again, Albin did not dispute the fact that she owned the dog that harmed Bradley. She did contend, however, that Allen could not produce any evidence of the remaining elements of her negligence action: (2) a duty to exercise reasonable care to prevent the dog from injuring others; (3) a breach of that duty; and (4) the breach proximately caused Bradley's injury. *Marshall*, 511 S.W.2d at 259 (element 4); *Dunnings*, 881 S.W.2d at 561–62 (elements

---

**3.** In *Owens v. Coury*, the Amarillo Court of Appeals noted in their opinion that "although *producing cause* is the proper causation element in strict liability, the Courys specifically plead proximate cause." 614 S.W.2d 926, 928 n. 1 (Tex.Civ.App.-Amarillo 1981, no writ) (emphasis added).

2, 3). Therefore, to defeat Albin's motion, Allen was required to produce summary-judgment evidence that raised a fact issue on each of the three challenged elements.

### ALBIN'S OBJECTIONS TO ALLEN'S SUMMARY-JUDGMENT EVIDENCE

In Allen's initial response to the no-evidence motion, she presented deposition testimony from co-defendant Haferkamp. In her deposition, Haferkamp testified about oral statements that Albin allegedly made to her in a conversation they had after Bradley was injured. Albin filed an objection to the testimony arguing that it was inadmissible under the "dead man's rule." TEX.R. EVID. 601(b). Allen's supplemental response presented additional evidence: a tape-recorded conversation between Haferkamp and Lisa Simpson, a claims representative from Farmers Insurance Group, that occurred on January 17, 2000, and was transcribed on February 14.[4] Albin filed objections to the transcript, this time on the grounds that it was not authenticated by either party to the conversation or by the person who transcribed the conversation and was hearsay.

*Preservation of objections*

On appeal, Allen contends that Albin's objections to the summary-judgment evidence have been waived because of failure to obtain a ruling from the trial court. Accordingly, Allen urges us not to exclude the objected-to evidence. In the alternative, Allen contends if we find the court implicitly sustained the objections, the court erred because the evidence is competent. Meanwhile, Albin argues that her complaints about the summary-judgment evidence were preserved, because the trial court expressly sustained those objections. In the alternative, Albin contends the trial court implicitly sustained the objections by granting summary judgment.

Rule of Appellate Procedure 33.1 considers complaints to have been preserved if the trial court "expressly or implicitly" rules on an objection. TEX.R.APP. P. 33.1(a)(2)(A). In addition, the complaining party preserves a complaint if the trial court refused to rule on an objection and the party objected to the refusal. *Id.* 33.1(a)(2)(B). Accordingly, Albin waived her complaints about the summary-judgment evidence unless she obtained an express or implied ruling from the court, or objected to the court's refusal to rule. *Id.*

*Was there an express ruling?*

 At the summary-judgment hearing, counsel for both parties presented arguments about the propriety of summary judgment. As part of Albin's argument, her counsel discussed the objections to the evidence which Albin had filed. Allen's counsel responded. After both parties concluded their arguments, the court made the following ruling:

> The Court: Jim, I almost hate to do this because I know you've worked like a dog, and you've come up with some almost touching theories that might get

---

**4.** This information came from "exhibit A" which was attached to Allen's supplemental response. Exhibit A is a copy of Albin's interrogatory answers. We rely on this information for background only, and we do not take a position about whether or not interrogatory answers are competent summary-judgment evidence. That issue has not been raised by any of the parties, and therefore, it is not before us. We do note, however, that according to the Rules of Civil Procedure, "[a]n-

swers to interrogatories may be *used only against the responding party.*" TEX.R. CIV. P. 197.3 (emphasis added); *see also Garcia v. National Eligibility Express,* 4 S.W.3d 887, 891 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (court held that interrogatory answers are incompetent summary-judgment evidence when a party relies on his own interrogatory answers to show there is a fact issue because such use is in contravention of Rule 197.3).

you past the summary judgment situation, but I don't think you have, and so I'm going to grant the motion for summary judgment .... I hate to do it, but I'm going to grant the motion for summary judgment.

It is clear from the record that the court made an express ruling on the summary-judgment motion at the end of the hearing. The court did not, however, make an express ruling on the objections.

On appeal, Albin argues that the court's order granting summary judgment is an express ruling sustaining her objections. The court's order provides the procedural history of the case, including mention of Albin's written objections to Allen's evidence. The court then concludes that "it is hereby ordered and decreed that the motion for summary judgment filed on behalf of the Estate of Frances Albin is, *in all respects,* granted." (Emphasis added). Albin contends that the emphasized language indicates that the court expressly sustained the objections. We disagree. The order says the court granted *the summary-judgment motion* "in all respects." Albin's no-evidence motion only addressed Allen's claims; Albin separately filed motions objecting to Allen's evidence. Therefore, we interpret the language "in all respects" to mean that the summary-judgment motion was granted in favor of Albin with respect to all of Allen's claims. The language is not an express ruling on Albin's objections.

*Was there an implicit ruling?*

In the alternative, Albin contends that the court made an implicit ruling sustaining her objections to the evidence by granting the summary judgment, and therefore, her objections are preserved. She relies on the Fort Worth court's decision in *Frazier v. Yu,* 987 S.W.2d 607 (Tex.App.-Fort Worth 1999, pet. denied). In *Frazier,* the court held that because the

trial court granted summary judgment and "stated that it reviewed all *competent* summary-judgment evidence, this create[d] an inference that the court implicitly sustained [the defendant's] objections" to the summary-judgment evidence. *Id.* at 610 (emphasis in original). Thus, our sister court concluded that the defendant's objections had been preserved by an implicit ruling. *Id.;* Tex.R.App. P. 33.1(a)(2)(A).

■ But the Fort Worth court has also held that when a trial court grants summary judgment, this "creates an inference that it implicitly reviewed and overruled [the defendant's] objections" to the summary-judgment evidence. *Blum v. Julian,* 977 S.W.2d 819, 823–24 (Tex.App.-Fort Worth 1998, no pet.). Accordingly, the holdings in *Frazier* and *Blum* are contradictory: how in one case can a summary judgment imply that a court sustained objections, yet in another imply that a court overruled objections? The San Antonio court recently recognized this weakness in the Fort Worth court's analysis of this issue when it wrote:

... [R]ulings on a motion for summary judgment and objections to summary-judgment evidence are not alternatives; nor are they concomitants. Neither implies a ruling-or any particular ruling-on the other. In short, a trial court's ruling on an objection to summary-judgment evidence is not implicit in its ruling on the motion for summary judgment; a ruling on an objection is simply not "capable of being understood" from the ruling on the motion for summary judgment. We therefore reject the reasoning in *Blum* and *Frazier.* We instead align ourselves with the Fourteenth Court of Appeals. *See Dolcefino v. Randolph,* 19 S.W.3d 906, 926 (Tex. App.-Houston [14th Dist.] 2000, no pet. h.) ("Unlike other courts faced with similar situations, we cannot infer from

the record in this case that the trial court implicitly overruled or implicitly sustained appellants' objections.").

*Well Solutions, Inc. v. Stafford,* 32 S.W.3d 313, 317 (Tex.App.-San Antonio 2000, no pet. h.). We agree with the San Antonio court that the granting of a summary-judgment motion does not necessarily provide an implicit ruling that either sustains or overrules objections to the summary-judgment evidence. Thus, we reject Albin's argument that the court's order granting summary judgment is an implicit ruling sustaining her objections.

▆ We also agree with the court in *Dolcefino* about the "better practice" for trial courts when ruling on summary-judgment motions and objections to summary-judgment evidence:

> We believe the better practice is for the trial court to disclose, in writing, its rulings on all objections to summary-judgment evidence at or before the time it enters the order granting or denying summary judgment. Practitioners should facilitate this procedure by incorporating all parties' objections to summary-judgment evidence in proposed orders granting or denying summary judgment and including a "Mother Hubbard" recitation to encompass any objections not otherwise addressed in the proposed orders .... In any context, however, it is incumbent upon the party asserting objections to obtain a written ruling at, before, or very near the time the trial court rules on the motion for summary judgment or risk waiver. *See* Tex.R.App. P. 33.1(a).

*Dolcefino v. Randolph,* 19 S.W.3d 906, 926 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *see Eads v. American Bank, N.A.,* 843 S.W.2d 208, 211 (Tex.App.-Waco

1992, no writ) ("[W]e hold that evidence that has been objected to remains part of the summary-judgment evidence unless an order sustaining the objection is reduced to writing, signed, and entered of record."). The "better practice" described in *Dolcefino* was not followed in the case before us,[5] and we cannot determine from this record that the trial court implicitly ruled on Albin's objections.

*Conclusion*

We find that the court did not "expressly or implicitly" rule on Albin's objections to Allen's summary-judgment evidence. Tex.R.App. P. 33.1(a)(2)(A). Also, Albin did not object to the court's refusal to rule. *Id.* 33.1(a)(2)(B). Therefore, the objected-to evidence remains a part of the summary-judgment evidence. *Wright v. Greenberg,* 2 S.W.3d 666, 675 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); *Williams v. Conroe Indep. School Dist.,* 809 S.W.2d 954, 957 (Tex.App.-Beaumont 1991, no pet.).

### ALLEN'S RESPONSES TO THE MOTION

*Strict liability claim*

▆ In her initial response to Albin's motion, Allen presented Haferkamp's deposition testimony as evidence that would establish a fact issue on the contested elements of her strict liability claim: (2) the dog had dangerous propensities abnormal to its class; (3) Albin knew or had reason to know the dog had dangerous propensities; and (4) those propensities were a producing cause of the plaintiff's injury. *Owens,* 614 S.W.2d at 928; *Wells,* 480 S.W.2d at 33. Allen also filed a supplemental response and attached additional evidence: (a) transcript of a tape-recorded

---

**5.** The use of a "Mother Hubbard" clause to rule on *objections* should present no problem; its use in the summary judgment context to

dispose of *claims* is disfavored. *See Lehmann v. Har-Con Corp.,* 39 S.W.3d 191 (Tex.2001).

conversation that Haferkamp had with an insurance claims adjuster; and (b) deposition testimony from Michael Henderson, Albin's grandson.

The second element of a strict liability claim requires the plaintiff to prove that the animal had dangerous propensities abnormal to its class. *E.g., Marshall,* 511 S.W.2d at 258 (boar was dangerous); *Farley v. M M Cattle Co.,* 549 S.W.2d 453, 456 (Tex.Civ.App.-Waco 1977, writ ref'd n.r.e.) (horse named "Crowbar" had dangerous propensities abnormal to its class). Haferkamp's deposition testimony recounted statements that Albin made during a conversation they had after the incident. Albin told her that the dog had knocked Albin down on occasion and that the dog was "ferocious," "mean," and "bad." In addition, Albin told her that the dog did not like children. Henderson's deposition testimony also corroborated Albin's statement to Haferkamp about the dog's propensity to knock her down.

We find that Allen has produced more than a scintilla of evidence that "furnishes some reasonable basis for differing conclusions by reasonable minds" about whether the dog had dangerous propensities. *Kindred,* 650 S.W.2d at 63; *cf. Dunnings,* 881 S.W.2d at 561 (*nothing* in the summary-judgment evidence *suggested* the dog had dangerous propensities that were abnormal when compared to other dogs) (emphasis added).[6]

The third element of Allen's strict liability claim requires evidence that Albin knew or had reason to know of the dog's dangerous propensities. *Owens,* 614 S.W.2d at 928; *Wells,* 480 S.W.2d at 33. Albin contends that even if Allen produced evidence that the dog had dangerous propensities, that evidence does not prove that she had

knowledge of those propensities prior to Bradley's being injured. However, we find that a jury might infer that even though the conversation between Albin and Haferkamp occurred after the attack, Albin was conveying what she already knew about the dog's nature. A jury might infer to the contrary, though, and conclude that Albin said those things about the dog's nature only because it had hurt the toddler. But we review the summary-judgment evidence in the light most favorable to Allen, disregarding all contrary evidence and inferences. *Robinson,* 998 S.W.2d at 410. Thus, we find that the above evidence and favorable inference "furnishes some reasonable basis for differing conclusions by reasonable minds" about whether Albin knew or had reason to know of her dog's dangerous propensities prior to Bradley's being injured. *Kindred,* 650 S.W.2d at 63.

■■ The fourth element requires the plaintiff to prove that the animal's dangerous propensities were a producing cause of his injuries. *Owens,* 614 S.W.2d at 928 n. 1. A "producing cause" is a contributing cause that, in a natural sequence, produces the plaintiff's injury. *Rourke v. Garza,* 530 S.W.2d 794, 801 (Tex.1975). In her deposition, Haferkamp described how Bradley was harmed by the dog:

Q: Can you tell me what happened?

A: I put the other little children down to take a nap and Bradley, he didn't want to go to sleep that day for some reason, I don't know why. So I thought, well, I'll just take him outside for a little while and then maybe, you know, he'll get tired and sleepy and want to go back in, you know, and take a nap. *And then he walked over to that fence and that's*

---

**6.** We have found no Texas authority that limits the "class" to the particular breed of the dog.

*when the dog jumped at the fence and scratched him.* And I was right there standing right by him.

(Emphasis added). We find that this testimony is more than a scintilla of evidence that shows that the dog was a "contributing cause, which, in a natural sequence," produced Bradley's injuries. *Id.*

In conclusion, after reviewing all of the summary-judgment evidence attached to Allen's initial and supplemental responses, we find that Allen has raised fact issues on all of the challenged elements. TEX.R. CIV. P. 166a(i). Thus, we find that the trial court erred by granting summary judgment for Albin with respect to the strict liability claim.

*Negligence claim*

Allen filed deposition testimony from Haferkamp and Henderson as evidence that would raise fact issues on the challenged elements of her "negligent handling of an animal" claim: (2) the defendant owed a duty to exercise reasonable care to prevent the animal from injuring others; (3) the defendant breached that duty; and (4) the defendant's breach proximately caused the plaintiff's injury. *Marshall,* 511 S.W.2d at 259 (element 4); *Dunnings,* 881 S.W.2d at 561–62 (elements 2, 3).

 Whether a duty exists is a threshold question of law that we decide from the facts surrounding the case. *Thapar v. Zezulka,* 994 S.W.2d 635, 637 (Tex. 1999). In *Marshall,* the Supreme Court held that negligence can be a correct theory in a personal injury case which concerns an animal. *Marshall,* 511 S.W.2d at 259. The Court said that "[a]ll animals are not vicious and a possessor of a non-vicious animal may be subject to liability for his negligent handling of such an animal." *Id.* As authority for this proposition, the Court cited our decision in *Dawkins v. Van Winkle,* where we held that an individual owes a duty to exercise reasonable care to pre-

vent his animal from injuring others. *Dawkins v. Van Winkle,* 375 S.W.2d 341, 344 (Tex.Civ.App.-Waco), *writ dism'd w.o.j.,* 377 S.W.2d 830 (Tex.1964). The Court also cited the RESTATEMENT OF TORTS § 518 (1938) as authority in accord with that proposition. Section 518 of the First Restatement provides:

> ... [O]ne who possesses or harbors a domestic animal, which he does not have reason to know to be abnormally dangerous but which is likely to do harm unless controlled, is subject to liability for harm done by such animal if, but only if,
>
> (a) he fails to exercise reasonable care to confine or otherwise control it, and
>
> (b) the harm is of a sort which it is normal for animals of its class to do.

RESTATEMENT OF TORTS § 518 (1938).

The Supreme Court decided *Marshall* in 1974, and three years later the American Law Institute published the RESTATEMENT (SECOND) OF TORTS (1977). Because the Court in *Marshall* cited with approval section 518 of the First Restatement, we now look to section 518 of the Second Restatement for an explanation of the duty an owner of a domestic animal owes to others. It states:

> Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if,
>
> (a) he intentionally causes the animal to do the harm, or
>
> (b) he is negligent in failing to prevent the harm.

RESTATEMENT (SECOND) OF TORTS § 518 (1977). This section applies to a dog owner, because a dog meets the definition of a "domestic animal," which is "an animal

that is by custom devoted to the service of mankind at the time and in the place in which it is kept." *Id.* § 506. The comments following section 518 explain why there is a duty:

> One who keeps a domestic animal that possesses only those dangerous propensities that are normal to its class is required to know its normal habits and tendencies. He is therefore required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm .... [Thus] the keeper of an ordinarily gentle [female dog] or cat is required to know that while caring for her puppies or kittens she is likely to attack other animals and human beings.

*Id.* § 518 cmt. h.

Accordingly, we recognize that Albin owed a duty to exercise reasonable care to prevent her dog under particular circumstances from injuring others, a legal duty that was acknowledged by the Court in *Marshall.* We emphasize that we are not "creating a new duty," which would require us to apply the four-prong test set out by the Supreme Court in *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994); rather, we find that Albin owed Bradley a duty already recognized by Texas jurisprudence.

■ The third element of Allen's negligence claim is that Albin breached her duty to exercise reasonable care to prevent her dog from injuring others. *Dunnings,* 881 S.W.2d at 561–62. When a duty requires the defendant to exercise reasonable care, the defendant's standard of care is defined as what a "reasonable prudent person" would or would not have done "under the same or similar circumstances regarding any reasonably foreseeable risk." *Colvin v. Red Steel Co.,* 682 S.W.2d 243, 245 (Tex.1984). To prove Albin

breached the standard of reasonable care, Allen must present evidence showing Albin did not act as a "reasonable prudent person" would have acted in the same or similar circumstances in handling the dog. *Id.*

In her petition, Allen alleged that Albin breached her duty of ordinary care by failing to take "reasonable steps" to prevent the dog from coming into contact with Bradley. In responding to Albin's no-evidence summary-judgment motion, Allen was required to produce evidence of the element of breach, *i.e.,* (a) that Albin did not act as an ordinarily prudent person would have in handling the dog, or (b) in Allen's words, evidence that Albin failed to take "reasonable steps" in handling the dog. *Id.* In her responses to the motion, Allen did not present evidence of a breach to raise a fact issue. Accordingly, because Allen did not produce any evidence of breach, the court properly granted Albin's no-evidence summary judgment on Allen's "negligent handling of an animal" claim.

### SUMMARY

We conclude that the trial court: (1) erred in granting summary judgment concerning the strict liability claim; and (2) properly granted summary judgment concerning the "negligent handling of an animal" claim. Thus, we will affirm the judgment in part, upholding the court's decision to grant summary judgment on the negligence claim; we will reverse the court's judgment in part, remanding the cause for further proceedings on Allen's strict liability claim.

### SUMMARY JUDGMENT IN FAVOR OF HAFERKAMP

We now address Allen's second issue concerning the trial court's granting of Haferkamp's traditional summary-judgment motion.

STANDARD OF REVIEW

■ Haferkamp filed what purports to be a "no-evidence" summary-judgment motion. TEX.R. CIV. P. 166a(i). In support of the motion, Haferkamp attached deposition testimony from four witnesses: (1) Jack Allen; (2) Billie Ann Allen; (3) Bradley; and (4) Haferkamp. We have previously determined that a no-evidence summary-judgment motion should be made without presenting evidence to support the motion. *Williams v. Bank One, N.A.*, 15 S.W.3d 110, 116 (Tex.App.-Waco 1999, no pet.); *Ethridge v. Hamilton County Elec. Coop. Ass'n*, 995 S.W.2d 292, 295 (Tex. App.-Waco 1999, no pet.). Haferkamp's motion claimed "[t]he depositions taken of Bradley Allen and his parents *conclusively show* that the plaintiffs" have no evidence of the proximate-cause element of Allen's negligence claims. Moreover, Haferkamp relied on her own deposition testimony in which she testified "under oath that she had no knowledge of the dog before the incident that forms the basis of this lawsuit." In other words, Haferkamp argued that the evidence attached to her motion demonstrated that there was no genuine issue of material fact concerning the proximate-cause element of Allen's negligence claims. *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990); *see* TEX.R. CIV. P. 166a(c).

Although Haferkamp labeled her summary-judgment motion as a "no-evidence" motion, she presented it with evidence that she contended would conclusively show that there was no genuine issue of material fact regarding one of the essential elements of Allen's claims. *See Jacobo v. Binur*, 70 S.W.3d 330, 333 (Tex.App.-Waco 2002, pet. granted). Therefore, we will examine the motion under the traditional summary-judgment standard of review.

The standard of review for a traditional summary judgment is well established: (i) the movant for summary judgment has the burden of showing there is no genuine issue of material fact and she is entitled to summary judgment as a matter of law; (ii) in deciding whether there is a disputed material-fact issue preventing summary judgment, we take evidence favorable to the non-movant as true; and (iii) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in her favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Larsen v. Carlene Langford & Assocs.*, 41 S.W.3d 245, 248–49 (Tex.App.-Waco 2001, pet. denied). When necessary to establish a fact issue, the non-movant must present summary-judgment evidence. *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 907 (Tex.1982); *Ethridge*, 995 S.W.2d at 294. To prevail on summary judgment, Haferkamp must show there is no genuine issue of material fact concerning one or more essential elements of Allen's causes of action, or establish each element of an affirmative defense as a matter of law. *Black*, 797 S.W.2d at 27; *Larsen*, 41 S.W.3d at 249.

The trial court granted the motion without stating the specific reasons for doing so. "[W]hen the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the [summary-judgment] motion." *Star-Telegram, Inc.*, 915 S.W.2d at 473.

ALLEN'S CLAIMS

Allen alleged two causes of action against Haferkamp: (1) a premises liability action claiming Bradley was injured by a condition of Haferkamp's property; and (2) an ordinary negligence action claiming Bradley was injured by Haferkamp's negligent activity on her property.[7]

*Premises liability claim*

Allen pled that Bradley was Haferkamp's business invitee, and thus, Haferkamp owed him a duty of ordinary care. Allen alleged that Haferkamp breached that duty because she knew or should have known that toddlers such as Bradley were susceptible to being injured by Albin's dog, and she failed to take reasonable steps to reduce the risk that the children she babysat would come into contact with the dog while playing in her backyard. According to Allen, the condition on Haferkamp's premises that posed an unreasonable risk of harm to the children was the chain link fence that separated her backyard from Albin's backyard where the dog was kept.

■ The elements of a cause of action for premises liability brought by an invitee are: (1) the plaintiff was an invitee, *i.e.*, a person who entered the defendant's premises with the defendant's knowledge and for their mutual benefit; (2) the defendant was an owner or occupier of the premises; (3) a condition on the premises posed an unreasonable risk of harm; (4) the defendant knew or reasonably should have known of the danger; (5) the defendant failed to exercise reasonable care to reduce or to eliminate the risk; and (6) the defendant's breach proximately caused the plaintiff's injuries. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex.2000) (elements 2–6); *Peerenboom v. HSP Foods, Inc.*, 910 S.W.2d 156, 161 (Tex.App.-Waco 1995, no writ) (element 1).

*Negligent activity claim*

Regarding the ordinary negligence claim, Allen alleged that Haferkamp acted negligently as a day-care provider. Allen pled that Haferkamp owed Bradley a duty

to provide adequate supervision to ensure that he would not suffer injuries while in her care. Allen claimed that Haferkamp breached this duty by allowing Bradley to get too close to Albin's dog. Allen also alleged that her negligence claim is the type of case wherein the circumstances surrounding the accident constitute sufficient evidence of the defendant's negligence; this is the doctrine of *res ipsa loquitur*, meaning "the thing speaks for itself."

■ The elements of a cause of action for negligence are: (1) the defendant owed a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injury. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex.1998).

### HAFERKAMP'S SUMMARY JUDGMENT MOTION

As noted earlier, Haferkamp's motion attacked the proximate cause element of both of Allen's claims by arguing that her own deposition testimony and "[t]he depositions taken of Bradley Allen and his parents *conclusively show* " that Allen has no evidence of that element.

*The challenged element of both claims: proximate cause*

■ Allen bears the burden of proving the element of proximate cause in both of her claims. The components of proximate cause are "cause-in-fact" and "foreseeability." *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995). Haferkamp argued in her motion that her summary-judgment evidence showed that Allen could not satisfy the "foreseeability" component.

■ To prove "foreseeability," the plaintiff must establish that a person of ordinary intelligence should have anticipat-

---

**7.** As stated in Allen's Second Amended Origi-

nal Petition filed on January 5, 2001.

ed the danger created by the negligent act or omission. *Id.,* 907 S.W.2d at 478. Foreseeability does not, however, require a person to foresee the particular accident or injury that in fact occurs. *Brown v. Edwards Transfer Co., Inc.,* 764 S.W.2d 220, 223 (Tex.1988). Foreseeability requires only that (1) the injury be of such a general character as might reasonably have been anticipated, and (2) the injured party be so similarly situated in relation to the wrongful act that the injury to him or to someone similarly situated might reasonably have been foreseen. *Nixon,* 690 S.W.2d at 551. The question of foreseeability involves a practical inquiry based on "common experience applied to human conduct." *City of Gladewater v. Pike,* 727 S.W.2d 514, 518 (Tex.1987). The inquiry is whether the injury might reasonably have been contemplated as a result of the defendant's conduct. *Id.*

*Haferkamp's summary-judgment evidence*

Haferkamp's motion contended that the following evidence demonstrated that she did not know Albin had a dog prior to the attack:

● Jack Allen, Bradley's father, stated in his deposition that he cannot dispute the fact that Haferkamp denies having any knowledge of the existence of Albin's dog prior to the attack.
● Billie Ann Allen, Bradley's mother, testified in her deposition that she had never seen Albin's dog before the incident and no one had ever mentioned the dog to her.
● Bradley testified in his deposition that he remembered nothing about the attack.
● Haferkamp stated in her deposition that she had no knowledge of the dog before the incident.

Haferkamp concluded: "Without knowledge of the dog it was impossible for the

Defendant to foresee the events that form the basis of this lawsuit." In other words, Haferkamp argued that because she did not know Albin had a dog, she could not have anticipated the danger that Bradley would be injured by the dog.

### THE DOCTRINE OF *RES IPSA LOQUITUR*

■ We initially address Allen's contention that we should reverse the summary judgment because Haferkamp did not address Allen's "cause of action of res ipsa loquitur" in her summary-judgment motion. Allen argues that the summary judgment ordered by the trial court did not dispose of the *res ipsa loquitur* claim. However, the doctrine of *res ipsa loquitur* is merely a rule of evidence by which a jury may infer negligence; it is not a separate cause of action apart from negligence. *Haddock v. Arnspiger,* 793 S.W.2d 948, 950 (Tex.1990); *Schorlemer v. Reyes,* 974 S.W.2d 141, 146 (Tex.App.-San Antonio 1998, pet. denied). Accordingly, Allen's contention that the summary judgment in favor of Haferkamp should be reversed because of a surviving "cause of action of res ipsa loquitur" is without merit.

### ALLEN'S RESPONSES TO THE MOTION

■ Haferkamp asserted in her summary-judgment motion that because she did not know Albin had a dog, she could not have anticipated the danger that Bradley would be injured by the dog. Therefore, she says, the evidence conclusively negates the element of "foreseeability." Allen responded to Haferkamp's contention by presenting evidence that demonstrated that Haferkamp knew her neighbor had a dog prior to the attack. Allen's evidence consisted of deposition testimony from Haferkamp and from her neighbor's grandson, Michael Henderson. Haferkamp testified:

Q: And it's your testimony that you never knew before that she even had a dog?

A: No, I did not know she had a dog. *She would have a dog and then it would leave, and then she'd have another one that come back, and when she got this one I did not know.*

(Emphasis added). Admittedly, Haferkamp said that she did not know when her neighbor started possessing the particular dog that harmed Bradley. But a jury might rely on her testimony as circumstantial evidence that because she had been aware of the fact that her neighbor kept a dog in the past, it is probable that she was aware of when her neighbor came into possession of the dog in question. Allen presented more poignant evidence on this issue, however.

Henderson, Albin's grandson, testified that his grandmother always kept the dog he gave her outside in her backyard. He said his grandmother had the dog for a "few months" prior to the incident. More importantly, he said that Haferkamp was aware his grandmother kept that particular dog. He knew that Haferkamp ran a day-care business in her home, and he often saw the children she baby-sat playing with the dog through the chain-link fence. He said that when the children would play with the dog through the fence, sometimes Haferkamp would be outside watching them and sometimes she would not. He remembered specific instances when Haferkamp and his grandmother would talk to each other at the fence while the dog was close to them. He recalled a conversation he had with Haferkamp when the dog was in plain view. Finally, he said all of these events occurred before the dog hurt Bradley.

■ As already noted, in deciding whether there is a disputed material fact issue preventing summary judgment, we take evidence favorable to the non-movant as true. *Nixon*, 690 S.W.2d at 548–49; *Larsen*, 41 S.W.3d at 248–49. We take Henderson's testimony concerning Haferkamp's knowledge of the dog prior to the attack as true. *Id.* Therefore, there was evidence Haferkamp knew about the dog.[8]

Haferkamp's other argument is that because the dog had been friendly towards the children, she could not foresee that the dog would suddenly attack Bradley. However, "foreseeability" does not require that Haferkamp have foreseen the particular accident or injury, *i.e.*, the dog suddenly attacking Bradley. *Brown*, 764 S.W.2d at 223. "Foreseeability" requires only that: (1) the injury be of such a general character as might reasonably have been anticipated; and (2) the injured party be so similarly situated in relation to the wrongful act that the injury to him or to someone similarly situated might reasonably have been foreseen. *Nixon*, 690 S.W.2d at 551. We apply this definition to the summary-judgment evidence.

Allen's evidence shows that Haferkamp baby-sat three children during 1985, the year Bradley was injured by the dog.

---

**8.** At the summary-judgment hearing, Haferkamp's counsel conceded that Henderson's testimony shows that Haferkamp had knowledge of the dog before the attack, but it does not, he argued, show that his client had knowledge of the dog's dangerous propensities. Rather, Haferkamp's counsel emphasized that Henderson's testimony illustrates that the dog interacted with the children without incident. For example, Henderson said the children played with the dog by sticking their hands through the fence, and the dog would lick their hands. However, neither of the claims requires that Allen prove the babysitter had prior knowledge of the dog's dangerous propensities. The only theory requiring that as an element is the strict liability claim that Allen brought against Albin. Thus, Allen did not have the burden to prove Haferkamp had knowledge of such propensities.

There is evidence that Haferkamp was aware that Albin kept the particular dog that attacked Bradley. Henderson's deposition testimony reveals that Haferkamp allowed the children she baby-sat to play with the dog. Henderson said that sometimes the children would be unattended when playing with the dog through the fence. A non-vicious domestic animal, *e.g.,* a dog, can cause injury to others under particular circumstances even though the animal has not exhibited such behavior in the past. *See* RESTATEMENT (SECOND) OF TORTS § 518 cmt. h (1977). Therefore, we conclude that a jury could find that Bradley's injury was of such a "general character as might reasonably have been anticipated." *Nixon,* 690 S.W.2d at 551 (part "1" of the definition of "foreseeability"). We also conclude that a jury might find that Bradley was so "similarly situated" in relation to the wrongful act that the injury to him or to someone similarly situated, *i.e.,* the other children Haferkamp baby-sat, might reasonably have been foreseen. *Id.* (part "2" of the definition of "foreseeability").

Allen has presented summary-judgment evidence that establishes a fact issue on the element of proximate cause as to each claim. *Westland Oil Dev. Corp.,* 637 S.W.2d at 907; *Ethridge,* 995 S.W.2d at 294. Thus, the trial court erred by granting summary judgment in favor of Haferkamp with respect to the claims Allen brought against her.

### SUMMARY

Having found that the trial erred by granting summary judgment, we will reverse and remand the cause for further proceedings.

### CONCLUSION

The summary judgment is affirmed regarding Allen's negligence claim against Albin, and that claim is severed. The summary judgment is reversed on Allen's strict liability claim against Albin and her claims against Haferkamp. The cause is remanded for further proceedings.

Justice GRAY dissenting and concurring.

TOM GRAY, Justice, dissenting and concurring.

There are two summary judgment orders under review in this case. Albin filed a no-evidence summary judgment motion as to Allen's strict liability and negligence claims against Albin. Haferkamp filed a no-evidence summary judgment motion as to Allen's negligence claim against Haferkamp. The majority reviews Albin's no-evidence summary judgment motion and determines, based on challenged evidence, that the trial court erred in granting summary judgment for Albin regarding the strict liability claim, but did not err in granting summary judgment for Albin regarding Allen's negligence claim against Albin. Then the majority determines the trial court erred in granting summary judgment for Haferkamp regarding Allen's negligence claim against Haferkamp.

I believe the majority has erred in the following ways: (1) holding that Allen has produced evidence regarding each of the four required elements of strict liability, specifically, that Albin's dog had vicious, dangerous, or aggressive propensities abnormal to its class and that Albin knew prior to B.A.'s injury that her dog had such propensities which were the producing cause of B.A.'s injury; (2) applying the traditional summary judgment standard of review to Haferkamp's no-evidence motion for summary judgment; and (3) determining the trial court did not implicitly sustain Albin's objections to Allen's evidence based

on the deadman's statute.[1] TEX.R. EVID. 601(b).

First, I will discuss the reasons I must respectfully dissent from the majority's holding that the trial court erred in granting Albin's no-evidence summary judgment motion regarding Allen's strict liability claim. Next I will discuss my disagreement with the majority's decision to review Haferkamp's no-evidence summary judgment motion as a traditional summary judgment motion, and finally I will discuss the reasons why I believe the trial court sustained the objections regarding the deadman's statute.

## ALBIN'S NO–EVIDENCE SUMMARY JUDGMENT MOTION

### Standard of Review

Because Albin filed a no-evidence summary judgment motion, the burden to produce evidence that would prevent the motion from being granted was placed on Allen. TEX.R. CIV. P. 166a(i). Allen must present more than a scintilla of probative evidence to raise a genuine issue of material fact on each of the challenged elements. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied). As the majority correctly stated, more than a scintilla of evidence exists "if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds" about a vital fact's existence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). But no more than a scintilla of evidence "exists when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, and in legal effect is no evidence." *Coastal Conduit & Ditching v. Noram Energy*, 29 S.W.3d 282,

284–85 (Tex.App.-Houston [14th Dist.] 2000, no pet.). And in the case of a no-evidence summary judgment motion, if reasonable minds could not differ as to the conclusion to be drawn from the non-movant's evidence, the movant's motion should be granted. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982); *Ridenour v. Herrington*, 47 S.W.3d 117, 120 (Tex.App.-Waco 2001, pet. denied).

### Allen's Burden

There are four elements that a plaintiff must prove to prevail in a strict liability action for injury by a dangerous domesticated animal: 1) the defendant was the possessor or owner of the animal; 2) the animal had vicious, dangerous, or aggressive propensities abnormal to its class; 3) the defendant knew or had reason to know the animal had such propensities; and 4) those propensities were the producing cause of the plaintiff's injury. *Wells v. Burns*, 480 S.W.2d 31, 33 (Tex.App.-El Paso 1972, no pet.); *Villarreal v. Elizondo*, 831 S.W.2d 474, 477 (Tex.App.-Corpus Christi 1992, no pet.); *Dunnings v. Castro*, 881 S.W.2d 559, 561 (Tex.App.-Houston [1st Dist.] 1994, writ denied). A strict liability claim for damages caused by dangerous domesticated animals must be "predicated upon a showing of the vicious or aggressive tendencies of the animal and the owner's knowledge of" those vicious or aggressive tendencies. *Dunnings*, 881 S.W.2d at 561; *see Marshall v. Ranne*, 511 S.W.2d 255, 258 (Tex.1974).

Thus, Allen must produce evidence that would allow reasonable minds to differ that the dog that either bit or scratched B.A. had vicious, dangerous, or aggressive propensities that are abnormal when compared to other dogs; that Allen knew or

---

**1.** I recognize that the "deadman's statute" is now a rule of evidence rather than a statute. TEX.R. EVID. 601(b). For simplicity it has con-

tinued to be referred to as the deadman's statute rather than the deadman's rule of evidence.

had reason to know prior to the injury that the dog had such propensities; and it was the vicious, dangerous, or aggressive propensities of the dog that were the producing cause of B.A.'s injury. If the evidence Allen presents only creates a mere surmise or suspicion for any of the required elements it will not withstand Albin's no-evidence summary judgment motion.

**Evidence**

Allen initially responded to Albin's no-evidence motion for summary judgment with a transcript of a deposition of Haferkamp, a co-defendant in the case, taken on November 21, 2000. After the trial court granted Allen a continuance, she supplemented her response with a statement made by Haferkamp to Haferkamp's attorney taken on April 28, 2000; a transcript of a phone conversation between Haferkamp and Lisa Simpson, an insurance representative, taken on January 17, 2000; and a transcript of a deposition of Michael Henderson, Albin's grandson, taken on January 10, 2001.

Haferkamp's deposition testimony and statements reveal she did not have personal knowledge of the dog or the dog's propensities. Haferkamp's description of the dog's propensities reportedly come from statements made by Albin while Albin and Haferkamp stood in Haferkamp's front yard after B.A. was injured. Henderson's deposition testimony reveals he gave the dog to his grandmother as a present, played with the dog regularly when he visited his grandmother, and had no knowledge of the dog biting or scratching anyone.

The evidence submitted by Allen in response to Albin's no-evidence motion for summary judgment fails to produce a scintilla of evidence that the dog had vicious, dangerous, or aggressive propensities that were abnormal when compared with other dogs or that Albin knew her dog had such propensities prior to the time B.A. was injured. What the evidence does show is that B.A. was standing by the fence holding a cookie in his hand; the dog either bit or scratched B.A. through the fence while B.A. was standing at the fence; the children in Haferkamp's care had previously played with the dog without incident; Albin regularly cared for and played with her dog while in her yard; the dog sometimes tripped Albin; Henderson regularly played with the dog in Albin's yard without incident; after B.A. was injured, Albin made statements to Haferkamp that the dog was bad, mean, ferocious, and did not like children. Missing from this evidence are any facts that would support Albin's statement regarding the propensities of her dog; that the dog's biting or scratching B.A. under the circumstances was abnormal when compared to other dogs; and that Albin was aware her dog would bite or scratch prior to B.A.'s injury. *See Dunnings v. Castro*, 881 S.W.2d 559, 561 (Tex.App.-Houston [1st Dist.] 1994, writ denied).

Allen presents evidence the dog had previously tripped Albin, but offers no evidence the dog had previously bitten or scratched anyone, much less a child. If B.A. had been injured by the dog tripping him, Allen could try to rely on the evidence presented to show that tripping is a vicious, dangerous, or aggressive propensity abnormal to dogs, that Albin was aware of the tripping prior to the injury, and the tripping was the producing cause of B.A.'s injury. However, Allen does not produce evidence that the dog had vicious, dangerous, or aggressive propensities that could be viewed as abnormal when compared to other dogs in regard to biting or scratching, which is the alleged producing cause of B.A.'s injury.

Even though the majority states "a jury might infer that even though the conversa-

tion between Albin and Haferkamp occurred after the attack, Albin was conveying what she already knew about the dog's nature," (maj.op. pp. 664–65) it was Allen's burden to produce evidence that rises to more than a mere surmise or suspicion that Albin knew prior to the time of B.A.'s injury that her dog had vicious, dangerous, or aggressive propensities that were abnormal when compared to other dogs. And Allen was unable to produce evidence that even remotely showed Albin had knowledge of the dog biting or scratching anyone prior to B.A.'s injury. Just the opposite in fact. Allen produced evidence that to Albin's knowledge, Albin, Henderson, and the children cared for by Haferkamp had all previously played with the dog without incident.

Based on the evidence, it is just as likely if not more likely that the dog was excited and exuberant as opposed to vicious, dangerous, or aggressive when B.A. was injured. I do not believe Allen met her burden to establish a scintilla of evidence that the dog had vicious, dangerous, or aggressive propensities that are abnormal when compared to other dogs, or that Albin knew of such propensities prior to B.A.'s injury. Because Allen was unable to present evidence for two of the four required elements, it was not error for the trial court to grant Albin's no-evidence summary judgment motion.

### HAFERKAMP'S NO–EVIDENCE SUMMARY JUDGMENT MOTION

#### Disagreement Regarding the Standard of Review

The majority chooses to examine Haferkamp's motion as a traditional motion for summary judgment because Haferkamp presented her no-evidence summary judgment motion with documentary evidence she contended would conclusively show there was no genuine issue of material fact regarding the proximate cause of B.A.'s injury.

As I stated in my dissent of *Jacobo*, "[w]hat is clearly a no-evidence motion cannot be disregarded, or 'treated' as a traditional motion, because of a reference to summary judgment evidence on which the no-evidence motion does not rely— evidence which is unnecessary to properly grant the no-evidence summary judgment motion." *Jacobo v. Binur*, 70 S.W.3d 330, 342 (Tex.App.-Waco 2002, pet. filed) (Gray, J. dissenting). Because a no-evidence summary judgment motion shifts the burden of presenting evidence to the nonmovant, Haferkamp did not need any evidence presented with her motion for the motion to be granted. The evidence presented just reiterates Haferkamp's assertion that there is no evidence to establish proximate cause, and that the only evidence available on the subject, and which she presented, is in fact to the contrary.

The majority's treatment of Haferkamp's no-evidence summary judgment motion as a traditional summary judgment motion causes the review to be conducted using an improper standard of review. This application of the traditional summary judgment standard disregards Rule 166a(i) and is not a proper reading of *Williams* and *Ethridge*. *Jacobo*, 70 S.W.3d at 341–42; *Williams v. Bank One, Texas*, 15 S.W.3d 110, 116 (Tex.App.-Waco 1999, no pet.); *Ethridge v. Hamilton Co. Elec. Coop. Ass'n*, 995 S.W.2d 292, 295 (Tex.App.-Waco 1999, no pet.).

As was the motion in *Jacobo*, Haferkamp's motion was very explicit. Haferkamp's motion is captioned as a no-evidence summary judgment motion. Allen responded to the motion as a no-evidence summary judgment motion by presenting evidence she believed raised more than a scintilla of evidence for each of the required elements of her negligence claim in

both her original response and her supplemental response. Both Haferkamp and Allen argued the motion as a no-evidence summary judgment motion to the trial court and the trial court ruled on the motion as a no-evidence summary judgment motion. No one at the trial court level was confused or mislead by Allen's filing even though it made reference to summary judgment evidence. This evidence was attached in support of Haferkamp's assertion that Allen had no evidence regarding proximate cause because Haferkamp's testimony that she had no knowledge of the dog's presence prior to the injury was undisputed, and therefore, Allen could not establish the foreseeability element of proximate cause.[2]

Until the precedential value of *Jacobo* is settled, I must continue to respectfully dissent to the majority's review of what is clearly a no-evidence motion for summary judgment under the standard of review for traditional summary judgments.

**Concurrence in the Result**

Under a no-evidence summary judgment standard of review it was Allen's burden to present more than a scintilla of probative evidence in order to raise a genuine issue of material fact for each of the required elements of negligence. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied). The evidence Allen presented to the trial court, including a deposition of Henderson and Haferkamp's own descriptions of the event, meets this burden. Therefore, I concur in the majority's result that it was error for the trial court to grant Haferkamp's motion for summary judgment.

## IMPLIED RULING BY THE TRIAL COURT

I believe the majority errs, however, in holding that the trail court did not implicitly sustain objections based on the deadman's statute.[3] Tex.R. Evid. 601(b). In *Williams*, we held that the trial court's granting of the plaintiff's summary judgment motion created an inference that the court implicitly overruled the defendant's motion for continuance. *Williams v. Bank One, Texas*, 15 S.W.3d 110, 114–15 (Tex. App.-Waco 1999, no pet.).

Here, Albin objected to evidence presented by Allen in response to Albin's no-evidence summary judgment motion. And there is ample indication in this case that the trial court considered the objection to Allen's summary judgment evidence including a reference to the objections in the judgment. Similar to *Williams*, we can conclude that the trial court's granting of Albin's motion creates an inference that the trial court implicitly sustained Albin's objections. Otherwise, the summary judgment would not have been granted. Therefore, I believe the trial court did implicitly sustain Albin's objections to evidence based on the deadman's statute regarding statements made by Haferkamp which she attributed to Albin, who is now deceased.

**2.** Allen's supplemental response to Haferkamp's motion contained the deposition testimony of Henderson which disputes Haferkamp's assertion that she did not know the dog was in Albin's yard until B.A. was injured.

**3.** The Fort Worth Court of Appeals' holdings regarding implied rulings are entirely consistent and the majority's attack on that court is unwarranted. (maj.op. pp. 662–63). Forth Worth established a bright line test that a ruling on objections will be implied in support of the trial court's judgment. *Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex.App.-Ft. Worth 1999, pet. denied); *Blum v. Julian*, 977 S.W.2d 819, 823–24 (Tex.App.-Ft. Worth 1998, no pet.).